Harvey R. CAREY, et al., Appellants,

v.

CRANE SERVICE COMPANY, INC.,
et al., Appellees.

No. 81–991.

District of Columbia Court of Appeals.

Argued April 22, 1982.

Decided Feb. 16, 1983.

William F. Mulroney, Washington, D.C.,
with whom Allen J. Lowe, Washington,
D.C., was on the brief, for appellants.

J. Joseph Barse, Washington, D.C., with whom Robert E. Higdon, Washington, D.C., was on the brief, for appellees.

Before NEWMAN, Chief Judge, and NEBEKER and PRYOR, Associate Judges.

NEBEKER, Associate Judge:

This is an appeal from a judgment dismissing the complaint in summary judgment context. The case was filed by Harvey and Trithenia Carey, appellants, seeking damages for multiple permanent injuries sustained by Harvey Carey while working in the regular course of his employment with the C.J. Coakley Company.[1] Pursuant to D.C.Code 1973, § 36–501, Carey was covered by the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 et seq. (1976) (hereinafter LHWCA), at the time of his accident.[2] Section 914(a) of the LHWCA requires that compensation "be paid periodically, promptly, and directly to the person entitled thereto, *without an award,* except where liability to pay compensation is controverted by the employer." (Emphasis added.) In compliance with § 914(a), the Coakley Company's insurance carrier promptly began Carey's compensation payments, filing at the same time the necessary standardized form with the Office of Workers' Compensation. That form

computed Carey's payments according to the percentage formula set forth in § 908 of the LHWCA. Carey continues to receive compensation as thus calculated. Because it was undisputed that Carey's injuries occurred in the regular course of his employment, the Coakley Company did not contest its liability.

Section 933(a) of the LHWCA provides that an injured worker who accepts workers' compensation can also seek to recover against a third party who may be liable in damages.[3] It is not necessary for the injured worker to elect whether to receive compensation or to recover against the third party. However, § 933(b) states:

> Acceptance of such *compensation under an award in a compensation order* filed by the deputy commissioner or Board *shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third person unless such person shall commence an action against such third person within six months after such award.* [Emphasis added.]

Two years after Carey's injury, appellants initiated this suit in negligence against the Crane Service Company, Inc. and the Hutchison Crane Company, Inc., appellees, as third-party tort-feasors. The

---

1. Carey was employed as a drywall laborer. On the day of the accident, he was at a construction site several stories above ground level removing platforms of sheet rock which had been hoisted up on a flying jib mounted on a crane. As he attempted to stabilize the jib for its retraction through a "window opening," his sleeve caught and he was pulled off the structure. He fell approximately 70 feet into a concrete-bottomed air vent shaft. He suffered multiple fractures to his ribs and legs resulting in permanent injury.

2. The Longshoremen's and Harbor Workers' Compensation Act was originally enacted by Congress in 1927. It was made applicable to workers in the private sector of the District of Columbia when Congress passed the Workmen's Compensation Act of 1928, Pub.L. No. 70–419, §§ 1–3, 45 Stat. 600 (1928) (codified at D.C.Code 1973, §§ 36–501, –502). Effective October 1, 1981, the District of Columbia Council enacted the Workers' Compensation Act of 1979, D.C.Law 3–77, 27 D.C.Reg. 2503 (1980)

(codified at D.C.Code 1981, §§ 36–301 et seq.), and at the same time repealed all earlier workers' compensation legislation applicable to the District. This court upheld the 1979 Act in *District of Columbia v. Greater Washington Central Labor Council,* D.C.App., 442 A.2d 110 (1982). Because events in this case occurred prior to the passage of the Act of 1979, appellants' appeal must be examined within the guidelines established for the Longshoremen's and Harbor Workers' Compensation Act.

3. Section 933(a) provides:
    If on account of a disability or death for which compensation is payable under this chapter the person entitled to such compensation determines that some person other than the employer or a person or persons in his employ is liable in damages, he need not elect whether to receive such compensation or to recover damages against such third person.

trial court dismissed the suit. The court held that the right to recover damages from appellees was assigned to the Coakley Company when appellants failed to file their action within the first six months of Carey's workers' compensation payments as required by § 933(b). However, § 933(b) also requires that an injured worker accept "compensation under an award in a compensation order." Carey merely accepted the compensation payments due him which the insurance carrier promptly initiated as required by § 914(a) and which Carey's employer never contested. Such payments are "not compensation under award in a compensation order." Consequently, the six-month non-assignment period has not tolled. The judgment is reversed and the case is remanded with instructions to reinstate the complaint and for further proceedings.

On the day following Carey's accident and qualifying injuries, his employer filed Form BEC–202 (Employer's First Report of Accident or Occupational Illness) with the proper government offices, and on April 7, his employer's insurance carrier commenced disability compensation payments and filed Form BEC–206 (Payment of Compensation Without Award) with the deputy commissioner for this compensation district. As required by § 908 of the LHWCA, Form

BEC–206 computed Carey's compensation at 66⅔ per centum of his average weekly wage. No other order awarding Carey disability benefits was ever entered by the Benefits Review Board or the deputy commissioner. Carey continues to receive and accept compensation as provided by Form BEC–206. His payments have never been controverted.

On September 5, 1979, approximately thirty months after the accident, appellants filed this suit against appellees as third-party tort-feasors. Appellants alleged that the negligent operation of a crane by appellees' employee was the proximate cause of Carey's injuries. The trial court granted appellees' motion for summary judgment citing *Rodriguez v. Compass Shipping Co. Ltd.*, 451 U.S. 596, 101 S.Ct. 1945, 68 L.Ed.2d 472 (1981), as dispositive. *Rodriguez* held that injured workers who are awarded workers' compensation cannot pursue their third-party claims after the statutory six-months expire.[4] However, the Supreme Court in *Rodriguez* expressly chose not to address the issue which is presented in this case, *i.e.,* whether payments of "compensation without an award" but in compliance with the LHWCA constitute "compensation under an award in a compensation order" as contemplated by § 933(b) of the LHWCA.[5] Be-

4. *Rodriguez* consisted of three consolidated cases. Each employee was a longshoreman who was injured aboard ship in the regular course of his employment and received compensation from his stevedore employer. After the respective six-month periods expired and the stevedores failed to pursue their assigned claims against the shipowners, the longshoremen filed their own third-party suits. The District Courts dismissed the actions by reason of the longshoremen's failure to bring suit within the statutory six months and the Court of Appeals affirmed. In upholding the lower courts, the Supreme Court stated:

The only conditions precedent to the statutory assignment are the acceptance of compensation pursuant to an award in a compensation order and the passage of the required period of 6 months. These conditions are admittedly satisfied in these cases. The statutory assignment encompasses "all right" of the employee to recover damages from a third party. These words preclude the possi-

bility that the assignment is only a partial one that does not entirely divest the employee of his right to sue, or that the employee and the employer possess concurrent rights to sue in the post-assignment period. When the [§ 933(b)] assignment occurs, it transfers the employee's entire right to commence a third-party action to the employer. [*Id.* 451 U.S. at 603, 101 S.Ct. at 1950.]

5. In *Rodriguez* two of the injured workers and their employers agreed to settlements during informal conferences convened by the Office of Workers' Compensation Programs following the stevedores' controversion of the workers' claims for compensation. 33 U.S.C. § 908(i) provides for settlement agreements when they are in the best interests of the injured employee. *See also* 20 C.F.R. §§ 702.241, –.242, –.311 to –.315 (1980). No formal orders were entered for the workers although 20 C.F.R. § 702.-315(a) requires that settlement agreements be embodied in memoranda or formal compensa-

cause this issue is one of first impression in this jurisdiction and requires the interpretation of § 933(b), it is necessary to begin by reviewing the LHWCA's 55 year history and § 933(b)'s several amendments.

When interpreting any portion of an act, the statutory meaning of a term or phrase must "be derived not from the reading of a single sentence or section, but from consideration of [the] entire enactment against the backdrop of its policies and objectives." *Don't Tear It Down v. Pennsylvania Ave. Dev. Corp.,* 206 U.S.App.D.C. 122, 128, 642 F.2d 527, 533 (1980). Ever since the LHWCA's inception in 1927, its purpose has been to secure expeditious compensation independent of proof of fault for injured workers with limited, determinative liability for employers.[6] *See DiNicola v. George Hyman Construction,* D.C.App., 407 A.2d 670, 672 (1979). When the statute was first enacted, the worker could elect between the certain recovery of compensation from his employer or the less certain, but probably more generous, remedy of an action for damages against a negligent third party. However, § 933(b) of the original act provided that the employee's election to accept compensation effected an immediate assignment to the employer of the employee's cause of action for negligence by third parties. The section read:

Acceptance of such compensation shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third person, whether or not the person entitled to compensation has notified the deputy commissioner of his election.

Nothing more than acceptance of compensation was required to evidence the employee's election. He did not have the option of compensation and a suit against a third party. *See Rodriguez, supra* 451 U.S. at 604, 101 S.Ct. at 1950–51.

In 1938, Congress enacted a procedural change to § 933(b) in order to protect employees from the harsh consequences of an improvident election.[7] The amended section stated:

Acceptance of such compensation *under an award in a compensation order filed by the deputy commissioner* shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third person. [Emphasis added.]

For a few years there was disagreement about what constituted "compensation under an award in a compensation order." Third parties and employers who had been impleaded by third parties for indemnification purposes argued that mere acceptance of compensation still operated as a conclusive election not to sue. However, in 1945 the Second Circuit addressed the issue in *Grasso v. Lorentzen,* 149 F.2d 127 (2d Cir.), *cert. denied,* 326 U.S. 743, 66 S.Ct. 57, 90 L.Ed. 444 (1945).[8] The court stated:

---

tion orders and filed with the deputy commissioner. At trial, the workers argued that § 933(b) of the LHWCA did not apply to them because they had not accepted "compensation under an award in a compensation order filed by the deputy commissioner or Board." The District Courts rejected the workers' arguments, and the Supreme Court specifically stated that its order granting the petition for certiorari did not extend to that question. The third worker did not raise the issue. *Rodriguez, supra* 451 U.S. at 598–99 n. 3, 101 S.Ct. at 1948 n. 3.

6. Longshoremen's and Harbor Workers' Compensation Act of 1927, Pub.L. No. 69–803, 44 Stat. 1424 (1927).

7. Act of June 25, 1938, ch. 685, 52 Stat. 1168.

8. In *Grasso v. Lorentzen, supra,* a dispute arose over the continued disability of the claimant. An informal conference was held by the claims examiner and he reduced his recommendations to memorandum form and placed them in the official file. The memorandum recommended, but did not require or approve, payment of additional compensation. Nevertheless, the insurance carrier paid the additional recommended sums and the claimant accepted them.

Thereafter, the claimant filed suit to recover damages for personal injuries and the defendant-shipowner argued that the suit was barred under 33 U.S.C. § 933(b) because the claimant had accepted compensation pursuant to a "compensation order" (the memorandum dictated by the claims examiner after the informal conference). The district court disagreed and

Before the statute was amended in June 1938, acceptance of compensation was enough under § 933(b) to operate as an assignment to the employer of the employee's cause of action against a third party, and thereafter there could be no election under § 933(a) to sue rather than to receive compensation. *But after the amendment the phrase "acceptance of compensation" in § 933(b) was modified by the words "under an award in a compensation order filed by the deputy commissioner." As a result of the amendment there must now be some official action by the Deputy Commissioner establishing an award of compensation in order to make such acceptance an assignment of the employee's cause of action against a third party.* Although the award may be informal, it must amount to an award by the Deputy Commissioner. The language and the legislative history of the amendment of 1938 show that it was intended to make the assignment effective only when compensation was accepted in accordance with such an award. [*Id.* at 128–29 (emphasis added) (citations omitted).]

Two years later the Supreme Court examined the issue and also held that the mere acceptance of compensation, without an award, does not preclude an injured worker from filing against a third-party tort-feasor. *American Stevedores, Inc. v. Porello,* 330 U.S. 446, 67 S.Ct. 847, 91 L.Ed. 1011 (1947).

During that same period, workers' compensation for longshoremen and harbor workers and the admiralty doctrine of seaworthiness were finally interwoven. That was an important juncture for the LHWCA. Prior to 1946, a longshoreman could only sue a third-party shipowner for negligence. The shipowner's "warranty of seaworthiness" for his vessel, which covered seamen and imposed virtual strict liability on the shipowner, was not extended to longshoremen as they were not employed by the shipowner.[9] A longshoreman was considered an invitee on board the ship and the only duty owed by a shipowner to a longshoreman was one of reasonable care. Annot., 44 A.L.R. 1025 (1926). However, in *Seas Shipping Co. v. Sieracki,* 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), the Court broke with that tradition and held that a shipowner's liability for any "unseaworthiness" in his vessel extended to longshoremen and harbor workers.[10] Having thus opened the door for third-party suits against shipowners based on strict liability, the Court laid the groundwork for *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), which paved the way to yet another amendment to § 933(b) of the LHWCA.

In *Ryan* the Court held that a shipowner found liable to a longshoreman in a third-party claim could assert its own claim for indemnification from the injured worker's

the court of appeals affirmed holding that the placement of the claims examiner's memorandum in the file did not constitute "an award in a compensation order" because it was advisory and did not constitute official action. *See Liberty Mutual Ins. Co. v. Ameta & Co.,* 564 F.2d 1097, 1102 (4th Cir.1977). We note that *Grasso, supra,* was written to address the unique circumstances faced by the employee prior to the 1959 amendment of the Act. *See infra.* As such, it would no longer appear to be good law in at least the Second Circuit. *See Rodriguez v. Compass Shipping Co., Ltd.,* 617 F.2d 955, 959 (2d Cir.1980).

**9.** 79 C.J.S. *Seamen* § 192 (1952) states:
[T]he doctrine of unseaworthiness is a species of liability without fault not limited by conceptions of negligence, and it is not con-

tractual in character. Accordingly, such liability does not depend on the exercise of reasonable care and may be imposed on the shipowner, in the case of unseaworthiness, irrespective of negligence or knowledge of condition of the vessel prior to her sailing. . . .

**10.** During the following years, suits against shipowners burgeoned as the range of items embraced by the concept of unseaworthy ships expanded to include even injuries sustained by longshoremen on dry land, *Thompson v. Calmar S.S. Corp.,* 331 F.2d 657 (3d Cir.1964), and assaults by seamen, *Boudoin v. Lykes Bros. S.S. Co.,* 348 U.S. 336, 75 S.Ct. 382, 99 L.Ed. 354 (1955).

employer, the stevedore, even absent an express agreement of indemnity. The Court stated that in a contract to perform stevedoring operations, the stevedoring company impliedly agreed with the shipowner both to perform those services in a workman-like way and to indemnify the shipowner for any liabilities he might incur as a result of the stevedoring company's failure to live up to that promise. *Ryan* thus exposed stevedores to a potentially substantial liability, greater than before, should an injured longshoreman elect to file a strict liability third-party claim against a shipowner rather than accept compensation "under an award." [11] Of course, the consequences of *Ryan* did not pass unnoticed by the stevedores. Although they could do nothing if an injured worker chose not to accept an award, the stevedores could reduce their chances of liability by forcing all injured workers who accepted compensation to do so under an award. They realized that it was in their interest to resist all payments until an award was made because, at that point, pursuant to § 933(b), all rights to sue third parties would immediately vest in them. The stevedore could then take no action on the employee's personal injury claim and protect itself from any costly suits for indemnification.

As a result of the stevedores' resistance to provide any payments without an award, the injured worker usually took "compensation [under an award] for the simple reason that his expenses must be met immediately, not months or years after when he has won

his lawsuit." S.REP. No. 428, 86th Cong., 1st Sess., 2 (1959), U.S.Code Cong. & Admin.News 1959, p. 2134. *See Bloomer v. Liberty Mutual Ins. Co.,* 445 U.S. 74, 80, 100 S.Ct. 925, 928, 63 L.Ed.2d 215 (1980). Such circumstances were felt by Congress to "wor[k] a hardship on an employee by in effect forcing him to take compensation under the act because of the risks involved in pursuing a lawsuit against a third party." *Id.* Consequently, Congress again amended § 933(b) by postponing the assignment of the worker's right to sue a third party by operation of law until six months after the acceptance of compensation.[12] It is that amended section which is in issue in the instant case. "The effect of the six-month provision, of course, was to give the [worker] an unqualified right to bring a third-party action during the six-month period. If his financial circumstances made it imperative that he accept a prompt settlement of his compensation claim, he could do so without forfeiting his right to seek a more liberal recovery from a responsible third party. Moreover, by bringing his own action, the [worker] would avoid the risk that his employers' potential conflict of interest—or possible erroneous evaluation of the merits of the claim—might result in its abandonment." *Rodriguez, supra* 451 U.S. at 611, 101 S.Ct. at 1954. There can be no question that Congress enacted the 1959 amendment with the clear intention of preserving the injured worker's right to claim against third parties with or without an award of compensation. The amendment

---

11. The *Ryan*-type of liability, together with the dozens of cases stemming from its precedent, was abolished by Congress in 1972. Compensation Act of 1972, Pub.L. No. 92–576, § 15(f)—(h), 86 Stat. 1262 (1972). Abolished were both the shipowner's absolute liability for unseaworthiness and the shipowner's right to recover from the employer-stevedore. At the same time Congress substantially increased both the maximum and minimum compensation payments for injured workers. "The elimination of the shipowner's cause of action against the stevedore was intended to reduce litigation, immunize stevedores and their insurers from liability in third-party actions, and assure conservation of stevedore resources for compensation awards to longshoremen."

*Bloomer v. Liberty Mutual Ins. Co.,* 445 U.S. 74, 84, 100 S.Ct. 925, 931, 63 L.Ed.2d 215 (1980). However, the shipowner remained liable for injuries sustained by the longshoremen which were due to the shipowner's negligence. *See Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979). For further discussion of the *Ryan* doctrine *see* 2A LARSON, WORKMEN'S COMPENSATION LAW § 77.60 (1982).

12. Act of Aug. 18, 1959, Pub.L. No. 86–171, 73 Stat. 391. *See* S.REP. No. 428, 86th Cong., 1st Sess., *reprinted in* 1959 U.S.CODE CONG. & AD. NEWS, p. 2134.

merely expanded that right to file third-party suits to include a six-month grace period after the award of compensation. It did nothing to eliminate the worker's right to file a claim after receiving compensation without an award. That right remained preserved by *American Stevedores v. Porello, supra.*

■ The crux of the analysis in this case focuses on the definition of the term "award" within the phrases compensation "under an award in a compensation order" and compensation "without an award." A particular term used in different sections of a statute must be assumed to have a consistent definition unless otherwise indicated or obvious from the face of the statute or the context in which it appears. *Atlantic Cleaners & Dyers, Inc. v. United States,* 286 U.S. 427, 433, 52 S.Ct. 607, 608, 76 L.Ed. 1204 (1932); *Fortin v. Marshall,* 608 F.2d 525, 528 (1st Cir.1979). Likewise "[s]tatutory provisions are to be construed not in isolation, but together with other related provisions." *United Mine Workers of America v. Andrus,* 189 U.S.App.D.C. 110, 114, 581 F.2d 888, 892 (1978). To define the term "award" too broadly, so as to construe compensation "under an award in a compensation order" to include virtually all payments, would be inconsistent with other sections of the LHWCA. Section 914(a) states:

> Compensation under this chapter shall be paid periodically, promptly, and directly to the person entitled thereto, *without an award,* except where liability to pay compensation is controverted by the employer. [Emphasis added.]

Section 913(a) similarly distinguishes compensation "without an award." It states: "If payment of compensation has been made *without an award* . . . a claim [for an award of compensation] may be filed within one year after the date of the last payment." (Emphasis added.) Once the claim

is made and the necessary investigations and hearings are held, the deputy commissioner must "*by order,* reject the claim or make an award in respect of the claim." Section 919(c) (emphasis added). Under §§ 913(a), 914(a), and 919(c), payments made without an award are not synonymous with compensation paid under the terms of an award.

The distinction is also drawn in §§ 914(e) and (f) where additional compensation is made payable for overdue installments. Section 914(e) states:

> If any installment of compensation payable *without an award* is not paid within fourteen days after it becomes due . . . there shall be added to such unpaid installment an amount equal to 10 per centum thereof . . . . [Emphasis added.]

By contrast, § 914(f) provides:

> If any compensation, payable *under the terms of an award,* is not paid within ten days after it becomes due, there shall be added to such unpaid compensation an amount equal to 20 per centum thereof . . . . [Emphasis added.]

To hold that payments made without an award in § 933(b) are subsumed under the phrase "compensation under an award" would violate the rule that terms and phrases must be construed consistently throughout a statute.

Other jurisdictions are split in their interpretations of the term "award" within the two phrases of the statute. Appellees place their reliance on *Liberty Mutual Insurance Co. v. Ameta and Co.,* 564 F.2d 1097 (4th Cir.1977). In that case the court held that various documents received by the proper government officers "constituted sufficient affirmative action and a determination by the deputy commissioner granting to [the employee] so as to constitute an 'award' of benefits in a compensation order under 33 U.S.C. § 933(b) without the entry of a formal award." [13] *Id.* at 1103. The documents

---

13. The documents filed in *Liberty Mutual* were
a) Form BEC–202—Employer's First Report of Accident or Occupational Illness; and

b) Form BEC–206—Payment of Compensation Without Award; and
c) Form No. 6—Attending Physician's Report; and

submitted in that case were virtually identical to those filed in the instant case.[14] The court stated:

An award under a compensation order does not require formal entry of an award *per se*. Rather, the focus should properly be upon some act of ratification of compensation, whether formal or informal, and by the subsequent acceptance of compensation by the claimant. [*Id.* at 1102.]

*See also Collins v. Norfolk Shipbuilding & Drydock Corp.,* 522 F.Supp. 1211 (E.D.Va. 1981); *Larson v. Associated Container Transp. (Australia),* 459 F.Supp. 561 (E.D.Va.1978); *Francavilla v. Bank Line, Ltd.,* 470 F.Supp. 94 (S.D.N.Y.1979). Interestingly, one of the cases to employ the *Liberty Mutual* rule was *Rodriguez v. Compass Shipping Co., Ltd.,* 456 F.Supp. 1014 (S.D.N.Y.1978), which was the lead case in *Rodriguez v. Compass Shipping Co., Ltd.,* 451 U.S. 596, 101 S.Ct. 1945, 68 L.Ed.2d 472 (1981). The trial court in the instant case cited to the Supreme Court in *Rodriguez* as disposing of the issue presently under examination. *See supra* note 5. When *Rodri-*

*guez* was before the district court, the court held that the settlement agreement entered into and signed by all the parties before a claims examiner during an "informal conference" constituted sufficient affirmative action for a determination that there had been an award of compensation. Although the district court cited to *Liberty Mutual* when it issued its ruling, it expressly stated that it did not agree with the conclusion of *Liberty Mutual* that the event which occurred in that case constituted a statutory award. *Rodriguez, supra,* 456 F.Supp. at 1020 n. 5.

In rejecting the holding in *Liberty Mutual,* the court in *Collier v. John Mendis, Inc.,* 526 F.Supp. 459, 460 (D.D.C.1981) stated:

*Liberty Mutual Insurance Co. v. Ameta and Co.,* [*supra,* is inconsistent] both with the language and policy of the Act. Indeed, it is not certain that the Fourth Circuit would have arrived at that result were it not for its policy, expressed in *Caldwell v. Ogden Sea Transport, Inc.,* 618 F.2d 1037 (4th Cir.1980), of allowing the employee to sue whenever the employer chooses not to sue.[15] Since the

---

d) Form BEC–208—Compensation Payment Stopped or Suspended. [*Liberty Mutual, supra* at 1101, n. 10.]
In addition to compensation payments, the longshoreman in *Liberty Mutual* also obtained a voluntary settlement of $1,000 from the third-party shipowner whose alleged negligence caused his injury. The settlement agreement further provided an indemnity clause wherein the shipowner agreed to indemnify the longshoreman up to $1,000 for all claims or lawsuits brought by the insurance carrier to recover any compensation payments. Unable to recover any of its payments from the longshoreman, the insurance carrier filed suit against the shipowner. Finding that there was an award of compensation based on the filing of various documents, the court was able to enforce the insurance company's claims for reimbursement of compensation. 33 U.S.C. § 933(h).

14. The documents filed in the instant case were Form BEC–202 and Form BEC–206. Five weeks after Carey's injury the insurance carrier temporarily suspended payments to correct an error in its calculations of Carey's average weekly wage. However, the form suspending Carey's initial payment of $215.20 per week, Form BEC–208, and the form initiating his recalculated payment of $187.36 per week, Form

BEC–202, were both filed with the deputy commissioner on the same day. The reason given on the form for suspending the compensation was to correct the error in the original amount.

15. In *Caldwell, supra,* the Fourth Circuit expanded the injured worker's right of action in third-party suits set down in *Czaplicki v. The Hoegh Silvercloud,* 351 U.S. 525, 76 S.Ct. 946, 100 L.Ed. 1387 (1956), where an assignee-employer's conflict of interest with the third party reassigned to the injured worker any right to sue the third party. The court in *Caldwell* stated:

The fundamental point in *Czaplicki* is that notwithstanding a statutory assignment of the longshoreman's right of action, that right of action may be revested in the longshoreman when it becomes manifest that the assignee, with knowledge of its exclusive right to control and prosecute the claim, nevertheless declines to do so for any reason. This surely accords with the equitable considerations that the longshoreman should not lose his substantive right simply by reason of disinclination of the statutory assignee to sue, and that a deliberate decision by the latter to forego the exclusive right to control prosecu-

*Caldwell* policy was overruled in *Rodriguez v. Compass Shipping Co.,* 451 U.S. 596, 101 S.Ct. 1945, 68 L.Ed.2d 472 (1981), [*see supra*] invoking the *Liberty Mutual* rule might have effects unforeseen by the Court that adopted it.

Other courts have similarly rejected the *Liberty Mutual* analysis. In *Dunbar v. Retla Steamship Co.,* 484 F.Supp. 1308, 1311 (E.D.Pa.1980), the court held that "mere acceptance of compensation payments does not preclude an injured employee from thereafter electing to sue a third-party tortfeasor." *Quoting American Stevedores v. Porello, supra* 330 U.S. at 456, 67 S.Ct. at 853. In *Dunbar,* the defendant moved for summary judgment on the grounds that (1) a claim had been filed with the Office of Worker's Compensation Programs, (2) the employer had submitted all the necessary forms (including BEC–202, BEC–206, BEC–208 and form No. 6), *see supra* notes 13 and 14, and (3) the employee had received compensation more than six months prior to bringing the third party action. The Court found that filing the claim was not an act that could be properly construed as an award under § 933(b) and that there had been no substantial involvement with the OWCP sufficient to view acceptance of compensation as a forfeiture of the employee's rights against third-party tort-feasors. The Court further stated:

> To allow an assignment of a claimant's entitlement to sue to be triggered by the mere acceptance of benefits and the passage of time, at a point when the claimant is most in need of those benefits, would increase the likelihood that the as-

tion of the claim must reflect a knowledge-

signment will be unwitting and unwilling, for both employer and employee—a result at odds with the purpose of the Act generally and this section in particular. [*Id.* at 1311.]

*See also Fearson v. Johns-Manville Sales Corp.,* 525 F.Supp. 671 (D.D.C.1981); *Theodore v. Moore McCormack Lines, Inc.,* 516 F.Supp. 25 (S.D.N.Y.1981); *Sea Quest Marine, Inc. v. Cove Shipping, Inc.,* 474 F.Supp. 164 (W.D.Wash.1979).

As in *Dunbar,* the facts in the instant case show no involvement by the deputy commissioner or the Office of Worker's Compensation Programs and no controversion by appellant Carey's employer. The appellants merely accepted compensation which was offered without benefit of an award and to which they were seemingly entitled. To allow assignment of their claim based on those facts would surely violate the LHWCA's statutory purpose, and would be inconsistent with other provisions of the Act. Accordingly, the judgment of the Superior Court dismissing the complaint is reversed and the case is remanded with instructions to reinstate the complaint and for further proceedings.

*Reversed and remanded for further proceedings.*

able relinquishment of right. [*Id.* at 1046.]