## In re METRO SUBWAY ACCIDENT REFERRAL.

### Misc. No. 82–306.

United States District Court, District of Columbia.

Dec. 18, 1984.

and fair litigation of his Fourth-Amendment claim. *Dunn v. Rose,* 504 F.Supp. 1333, 1337[5] (D.C.Tenn.1981).

**386**

William Mulroney, Peter Vangnes, Washington, D.C., for plaintiff.

Vincent Cohen, Washington, D.C., for WMATA.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

In the latest court action of this protracted litigation, Judge Gerhard A. Gesell on July 31, 1984 issued a show cause order, directing plaintiffs to provide "a detailed legal and factual explanation" in support of their position opposing dismissal of the filed cases.[1] Proceedings in these cases had been stayed since December 23, 1982. WMATA had moved to dismiss.

The Gesell order was predicated on the action of the Supreme Court in *Washington Metropolitan Area Transit Authority v. Johnson, et al.*, 467 U.S. 925, 104 S.Ct. 2827, 2836, 81 L.Ed.2d 768 (1984) (hereinafter *Johnson*). In *Johnson*, decided June 20, 1984, the court reversed the United States Court of Appeals for the District of Columbia Circuit,[2] and held that the term "employer" used in § 5(a) of the Longshore and Harbor Workers' Compensation Act (LHWCA or 1927 Act) was intended to include general contractors as well as direct employers, that WMATA qualified for § 5(a) immunity as a general contractor as long as it did not fail to meet its obligation to secure compensation for subcontractor employees under § 4(a), and that WMATA not only did not fail to meet its statutory obligation but acted above and beyond such obligation by purchasing "wrap-up" insurance on behalf of all of its subcontractors. Therefore, WMATA was immune from liability in the tort actions asserted by respondents.

*Johnson*, on its face, would have been dispositive of the issues raised by the

---

1. There are approximately 99 such cases.

2. *Johnson, et al. v. WMATA, et al.*, 717 F.2d 574 (D.C.Cir.1983).

"show cause" order of July 31, 1984, except that Congress on September 28, 1984, amended the LHWCA to provide that a general contractor in WMATA's position would not be entitled to immunity under § 5(a) of that Act.[3] Section 5(a) of the LHWCA was amended by adding the following new sentence:

> For the purposes of this subsection, a contractor shall be deemed the employer of a subcontractor's employees only if the subcontractor fails to secure the payment of compensation as required by section 4.

Congress specifically expressed its disapproval of *Johnson* by providing that a general contractor in WMATA's position would be amenable to suit and furthermore that the amendment would apply retroactively to all pending cases.[4] The plaintiffs' Response to the Show Cause Order was filed on August 31, 1984 and therefore did not address the problems raised by the amendments subsequently enacted on September 28, 1984. Instead, plaintiffs rely on claims which were either disposed of in *Johnson*[5] or have become moot because of the amendments by Congress. Plaintiffs also attempt to distinguish *Johnson* on the grounds that *Johnson* was predicated on the mistaken assumption that these cases were governed by the 1928 Act which made the original 1927 Act applicable to the District of Columbia rather than on the 1979 Act (New Act) which became effective July 24, 1982. With the passage on September 28, 1984 of the amendments to the LHWCA, they have retreated from this position and now concede the applicability of the 1928 Act.[6]

The basic issue is the ultimate reach of the 1984 amendments to the LHWCA and whether they require us to disregard the Supreme Court's decision in *Johnson*. WMATA in its submission of October 12, 1984 faces this issue head-on.[7] It claims that (1) the 1984 amendments are simply not applicable to these cases because they reach no further than the 1927 Act, which no longer governs the compensation claims of non-maritime employees in the District of Columbia and (2) if held to be retroactive, the amendments would be unconstitutional. We address ourselves to the first of these two contentions.

*The Relevant Legislation*

The original Longshoremen's and Harbor Workers' Compensation Act of 1927, as the title would imply, concerns the compensation for injuries suffered by maritime workers, such as harbor workers, longshoremen, and other maritime employees. 33 U.S.C. §§ 901, *et seq.* It was nationwide in coverage and did not cover non-maritime employees. It is appropriately listed under Chapter 33—Navigation and Navigable Waters of the United States Code. When enacted, the LHWCA therefore did not apply to non-maritime employees in the District of Columbia.

This situation was soon to change. In 1928 Congress, acting as legislature for the District of Columbia and desiring to provide protection for workers in the District, passed the District of Columbia Workers' Compensation Act of 1928. D.C.Code, §§ 36–501, *et seq.* (1973 ed.) (Old or 1928 Act). It accomplished this result by making reference to the provisions of the 1927 Act and, where relevant, making them applicable to the District of Columbia. It used the following language for this purpose:

---

**3.** Longshore and Harbor Workers' Compensation Act Amendments of 1984. Pub.L. No. 98–426 (1984) (hereinafter 1984 amendments).

**4.** Joint Explanatory Statement of Committee of Conference, Cong.Rec. H 9598 (Sept. 14, 1984).

**5.** Plaintiffs argue principally that: (1) WMATA is not a general contractor within the meaning of the LHWCA; (2) WMATA is not entitled to immunity for the torts of its subcontractors; and (3) WMATA is not entitled to immunity for the torts of its agents. Plaintiff would confine WMATA's immunity to its own torts.

**6.** Plaintiffs' present position is reflected in its submission of October 26, 1984. Plaintiffs' Reply to Defendants' Reply to Plaintiffs' Response to the Court's Show Cause Order, p. 3.

**7.** WMATA Reply of October 12, 1984 to Plaintiffs' Response to Show Cause Order.

The provisions of Chapter 18 of Title 33, U.S.Code, *including all amendments that may hereafter be made thereto,* shall apply in respect to the injury or death of an employee of an employer carrying on any employment in the District of Columbia irrespective of the place where the injury or death occurs; .... (emphasis supplied).

D.C.Code § 36–501 (1973 ed.).[8] In passing the 1928 Act, Congress did not amend or purport to amend the LHWCA, but enacted a separate law making the LHWCA's requirements applicable to all workers in the District of Columbia. Until July 24, 1982, workmen's compensation protection for non-maritime workers in the District of Columbia was provided under the 1928 Act, which, while incorporating the standards of the 1927 Act, is applicable only to this particular jurisdiction.

Matters remained in this posture until 1973. In that year Congress, again acting as legislature for the District of Columbia, passed the District of Columbia Self-Government and Governmental Reorganization Act, known commonly as the "Home Rule Act." D.C.Code §§ 1–201, *et seq.* Reflecting a desire to relieve Congress of its long-time burden of having to legislate on local District matters and to provide the powers of self-government to District residents, this Act gave the District of Columbia City Council the power, subject to certain specified exceptions not here relevant, to amend or repeal any provision in the District of Columbia Code. D.C.Code § 1–208(b). At the same time, Congress reserved its plenary authority, as legislature for the District, to enact legislation for the District and to amend or repeal any act passed by the D.C. City Council. D.C.Code § 1–206.

At this stage, the District of Columbia exercised for the first time its jurisdiction in the field of workmen's compensation. In 1980, the City Council, acting pursuant to its powers under the Home Rule Act, passed the District of Columbia Workers' Compensation Act, D.C.Code §§ 36–301, *et seq.* (New Act). This legislation established an entirely new set of standards and procedures for the handling of non-maritime worker compensation claims in the District of Columbia. At the same time, § 46 of the New Act provided that the 1928 Act "is hereby repealed." New Act § 46 (27 D.C.Reg. at 2541). Congress permitted the New Act, including the repeal of the 1928 Act, to take effect by choosing not to exercise its right under the Home Rule Act to veto within the 30–day waiting period. D.C.Code § 1–233(c)(1). The effective date of the New Act is July 24, 1982. D.C.Code § 36–345.

The next event in this chronology of the legislative history took place on September 28, 1984. On this date, Congress enacted legislation extensively amending the LHWCA of 1927.[9] Two of the amendments related to §§ 4(a) and 5(a) of the Act and are the focus of this litigation. They have the effect of providing that a general contractor in WMATA's position would not be entitled to immunity under § 5(a) of the Act and are to be applied retroactively to all pending cases. Although the *Johnson* case is not mentioned or referred to in the legislation itself, the Joint Statement of the Conferees makes it abundantly clear that it disapproves the Supreme Court's action in *Johnson* as not comporting with "the legislative intent of the Act nor its interpretation from 1927 through 1983." [10]

*Discussion*

There can be no dispute that the Congress has always reserved the full power, despite the Home Rule Act, to legislate in the field of workmen's compensation for the District of Columbia. It is less clear that it intended to make its disapproval of

---

**8.** The Old Act contains three brief additional provisions not relevant to the issue discussed herein. D.C.Code §§ 36–502–04.

**9.** Footnote 3, *supra.*

**10.** Joint Explanatory Statement of the Committee of Conference, Cong.Rec. H 9598. The accuracy of this statement does not square with the Supreme Court's assertion to the contrary and is subject to challenge. *Johnson,* supra, 104 S.Ct. 2832–33.

the *Johnson* decision applicable to the District of Columbia as well as to the rest of the nation.[11] For the purpose of this discussion, we need not speculate as to the intent of Congress, but accept as a fact that the Congress in enacting the 1984 amendments intended the amendments to §§ 4(a) and 5(a) of the 1927 Act to apply to the District of Columbia and therefore to this litigation. The crucial question is not whether Congress possessed the power and had this intent, but whether the means it employed achieved this result. Plaintiffs claim that based on the plain language of the 1984 amendments to §§ 4(a) and 5(a) of the 1927 Act, the language of the 1928 Act, as well as legislative history of the 1984 amendments, they are clearly intended to and do apply to the District of Columbia. If we accept these premises, the 1984 amendments effectively overruled the *Johnson* decision and these cases, otherwise controlled by *Johnson,* are still viable and not subject to dismissal.

On the other hand, WMATA also relies on the plain language of the 1984 amendments and the legislative history. As a result WMATA contends that the amendments are not applicable to the 1928 Act and therefore do not reach the cases before the court.

Both sides agree that a court should apply the law in effect at the time of its decision, absent statutory direction or legislative history to the contrary. The City Council has provided, without objection from Congress, that the New Act is applicable to claims arising after July 24, 1982, the effective date of the New Act. There is no indication in the legislative history of the New Act that the City Council intended that claims arising prior to the Act's effective date were to be governed by that Act. It has been determined by the highest court in this jurisdiction that claims arising before July 24, 1982, are governed by the

1928 Act. *Garrett v. Washington Air Compressor Co., Inc.,* 466 A.2d 462, n. 1 (1983) (claim arising before effective date of New Act held governed by 1928 Act); *see also Carey v. Crane Service Co., Inc.,* 457 A.2d 1102, 1103 n. 2 (1983). Plaintiffs, after originally contending that the applicable District of Columbia law is to be found in the New Act whose immunity provisions allegedly would have been overruled by the 1984 amendments, now have agreed with WMATA that these cases are to be governed by the 1928 Act.[12]

With respect to the issue presented, plaintiffs contend that the 1984 amendments to the 1927 Act are applicable to the 1928 Act, and to cases brought under that Act. WMATA, on the other hand, asserts that the 1928 Act, having been effectively repealed by the New Act, cannot provide a nexus for the application to the 1928 Act of the 1984 amendments to the original 1927 Act. We are compelled to agree with WMATA's position that the 1984 amendments, while having the effect of overruling *Johnson,* in its nationwide application, do not reach these District of Columbia cases.

In the first place, the 1984 amendments are specifically designed to make broad and extensive changes in the LHWCA of 1927. Among those numerous changes are two short amendments to §§ 4(a) and 5(a). Close reading of the statute demonstrates that the District of Columbia is not anywhere referred to either expressly or by implication. These amendments are specifically directed to the LHWCA, an act of nationwide coverage. This is the clear language of the amending statute.

Secondly, the possible applicability of the 1984 amendments to the District of Columbia rests upon the continuing viability *in proprio vigore* of the 1928 Act, a separate act admittedly applicable only to the Dis-

---

11. The Joint Statement of the Conferees is somewhat ambiguous as to whether the Congress was thinking of the Johnson litigation or the principle embodied in the *Johnson* decision. It states: "This (making these amendments apply to pending suits) will avoid the dismissal,

under WMATA, of third party suits which were pending or on appeal on the date of the enactment." Joint Explanatory Statement, *supra.*

12. Footnote 6, *supra;* WMATA's Supplemental Memorandum filed Nov. 9, 1984, p. 2.

trict of Columbia which incorporated by reference the standards of the LHWCA and all subsequent amendments made thereto. It is undisputed that the New Act expressly repealed the 1928 Act, with the result that the 1928 Act was no longer in existence on September 28, 1984, when the 1984 amendments became effective. When the 1984 amendments to the 1927 Act were passed, the 1928 Act which otherwise would have automatically incorporated these amendments, no longer existed as a conduit. Having been repealed, the 1928 Act could not be affected by amendments to the 1927 Act.

■ Plaintiffs claim that since these cases were brought under the 1928 Act, the 1928 Act must have remained in existence, despite its subsequent repeal, and therefore was subject to any amendments to the 1927 Act. Plaintiffs overlook the effect of "saving statutes" which apply to both Federal and District of Columbia legislation.[13] As WMATA points out, these savings statutes do not undo a repeal but provide that rights and liabilities existing at the time of the repeal will continue to exist. The status quo as of the date of the repeal preserves and protects these accrued rights and liabilities, even though the statute under which they arose has been repealed.[14] Except for the limited purpose of setting forth the standards which govern cases filed prior to July 24, 1982, the 1928 Act no longer exists.

Finally, the 1984 amendments do not in any way attempt to repeal the New Act or to overturn the New Act's repeal of the 1928 Act. It is well-settled that implicit

repeals of statutes are not favored. Moreover, even if the 1984 amendments expressly repealed the New Act, such repeal would not have revived the 1928 Act, in the absence of clear evidence of Congressional intent to revive.[15]

■ To conclude, these claims are governed and continue to be governed by the standards of the 1928 Act as such standards existed prior to the passage of the New Act on July 24, 1982. The *Johnson* decision, which preceded the passage of the 1984 amendments, applied the law in effect at the time it acted and held that WMATA is immune from liability in the pending actions. Congress' disapproval of the result in *Johnson* extends no further than the 1927 Act. Cases brought under the repealed 1928 Act are not affected. The decision in *Johnson* as applied to District of Columbia cases controls and plaintiffs' claims against WMATA shall be dismissed. Since these cases are disposed of on statutory grounds, it is not necessary to reach defendant's constitutional claims.

An order consistent with the foregoing has been entered this day.

---

**13.** *See* 1 U.S.C. § 109, which provides in pertinent part:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

This statute is a general act of Congress applicable to the District of Columbia. D.C.Code § 49–301.

**14.** Suspended animation is not a novel legal concept. For example, corporations no longer in existence for the purpose of carrying on business, still continue to exist for the purpose of suing and being sued. 29 D.C.Code § 397.

**15.** "Whenever an Act is repealed, which repealed a former Act, such former Act shall not thereby be revived, unless it shall be expressly so provided." 1 U.S.C. § 108.