**Katherine L. THOMAS, Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT
SERVICES, Respondent,**

**The Washington Post, Intervenor.**

No. 87–376.

District of Columbia Court of Appeals.

Argued May 5, 1988.
Decided Oct. 6, 1988.

John C. Duncan III, Washington, D.C.,
for petitioner.

Frederick D. Cooke, Jr., Corp. Counsel,
Charles L. Reischel, Deputy Corp. Counsel,
and Susan S. McDonald, Asst. Corp. Coun-
sel, Washington, D.C., were on the State-
ment in Lieu of Brief for the District of
Columbia.

Burt M. Zurer, Gaithersburg, Md., for
intervenor.

Before BELSON, TERRY, and
ROGERS, Associate Judges.

BELSON, Associate Judge:

Is an injured worker entitled to a hearing
and compensation award under the District
of Columbia Workers' Compensation Act of
1979, D.C. Code §§ 36–301 to –345 (1988),
even though no material issues are in dis-
pute and the self-insured employer is volun-
tarily paying benefits under the Act? The
District of Columbia Department of Em-
ployment Services answered that question
in the negative, determining that such a
worker does not have an absolute right to
either a hearing or the issuance of an
award of compensation. Petitioner, Kath-
erine L. Thomas, seeks review, asserting
that the plain language of § 21(c) of the
Act, D.C. Code § 36–320(c) (1988), compels
a hearing and an award whenever any par-
ty so requests. Alternatively, she contends
that the Department abused its discretion
under § 16(h) of the Act, D.C. Code
§ 36–315(h) (1988), in deciding that neither
hearing nor award was required in this
case. Because we conclude that the De-
partment's interpretation of the statute is
reasonable and that its decision not to issue
an award was not an abuse of discretion,
we affirm.

The Washington Post, the employer of
petitioner Thomas, does not contest its lia-
bility to pay compensation for Thomas' in-
jury. To expedite matters, the parties stip-
ulated to the following facts: On February
25, 1986, the day after Thomas was injured
at work, the Post began compensating her
for temporary total disability. Thomas im-
mediately sought and received treatment
for her injuries from Robert Dowd, M.D.,
an orthopedist. Shortly thereafter, the
Washington Post notified Thomas that it
had scheduled her an appointment with an-
other orthopedist, Louis Levitt, M.D., for

an evaluation of her disability. On the basis of Dr. Levitt's conclusion that Thomas was able to perform her regular duties, the Post terminated compensation payments on May 5, 1986. Thomas, who was still being treated by Dr. Dowd for her injuries, filed an application for a formal hearing with the Department on June 2, 1986, and a motion to expedite on June 13, 1986. On June 16, the Post agreed to resume compensation payments retroactive to May 6, 1986, and to treat them as an advance on any compensation ultimately determined to be due. In addition, the Post asked Thomas to submit to an independent medical evaluation by George Bogumill, M.D., a member of a panel of impartial physicians appointed by the Mayor pursuant to D.C. Code § 36–307(b) (1988). Because Dr. Bogumill concluded that Thomas was still temporarily totally disabled, the Post notified her attorney that it had changed its records to reflect that, as of May 6, 1986, payments were being made for continuing temporary total disability. No further change was made in the payments.

Pursuant to Thomas' application, however, a hearing was held on September 10, 1986. Although her right to benefits was no longer in dispute and payments had been voluntarily resumed, she sought by means of the hearing to be awarded a compensation order to which the parties would be legally bound. The hearing consisted of oral arguments by the attorneys for Thomas and the Post. No evidence was presented, other than the stipulated facts and supporting documents. Thomas argued that the unilateral termination of benefits in May, which had produced financial hardship for her, entitled her to have the merits of the case reduced to a compensation order. The Post maintained that Thomas was not entitled to a hearing or compensation order because there were no issues in controversy to be decided.

After considering the arguments, the hearing examiner issued a ruling denying an award and concluding that Thomas had had no right to a mandated (as distinguished from a discretionary) hearing. He based his decision on a reading of § 36–320(c) in conjunction with § 36–315(a) and (h). He noted that although § 36–320(c) appears to mandate a hearing whenever any interested party requests one, such a reading would be inconsistent with § 36–315(a) and (h).[1] The hearing examiner noted that the Act was designed to encourage voluntary payment of compensation and that § 36–315(a) contemplates that, where the employer makes prompt voluntary payments, no award should be made. He concluded that when an employ-

---

1. Section 36–320, "Procedure in respect of claims," provides in pertinent part:

(a) Subject to the provisions of § 36–314, a claim for compensation may be filed with the Mayor in accordance with regulations prescribed by the Mayor at any time after the first 3 days of disability following any injury, or at any time after death, and the Mayor shall have full power and authority to hear and determine all questions in respect of any claim.

. . . .

(c) The Mayor shall make or cause to be made such investigations as he considers necessary in respect of the claim, which may include processing the claim through a central system in order to give the Mayor an advisory opinion on the rate and degree of disability. *Upon application of any interested party the Mayor shall order a hearing within a reasonable time* not to exceed 120 days, unless he grants a special extension of time for the development of facts. . . . Within 20 days after such hearing is held, *the Mayor shall by order reject the claim, or make an award* in

respect of the claim based upon substantial evidence before him. If no hearing is ordered[,] . . . the Mayor shall, by order, reject the claim or make an award in respect of the claim based upon substantial evidence before him.
(Emphasis added.)

Section 36–315 provides:

(a) Compensation under this chapter *shall be paid* periodically, promptly, and directly to the person entitled thereto, *without an award,* except where liability to pay compensation is controverted by the employer.

. . . .

(h) The Mayor: (1) May upon his own initiative at any time in a case in which payments are being made without an award; and (2) shall in any case where right to compensation is controverted, or where payments of compensation have been stopped or suspended, . . . hold such hearings, and take such further action as he considers will properly protect the rights of all parties.
(Emphasis added.)

er is making payments voluntarily, § 36–315(h)(1) allows the Mayor, in his discretion, to hold a hearing and take any necessary further action, but does not require him to do so. Finally, the hearing examiner declared that

> if [petitioner's] position is accepted, every claimant might request a hearing and order whether or not employer disputes the claimant's right to benefits. This would serve to limit voluntary payment (since employer would have little to gain by making such payments), eliminate informal resolution, and create an explosion of litigation, all of which are contrary to the purposes of this Act.

The Acting Director affirmed the hearing examiner's order, ruling that "no provision of the rules confers a right to a hearing where there is no dispute." Relying on her decision in *Powell v. Wrecking Corp. of America,* H & AS No. 84–540, OWC No. 0051161 (March 4, 1987), she observed that to interpret § 36–320(c) harmoniously with § 36–315(a) and (h), § 36–320(c) must be read "as applying only in a case where there is a valid claim and a valid dispute."

In *Powell,* the Acting Director considered a case similar to the one at bar. As in this case, the employee attempted to press a claim for a compensation award even though the employer was making voluntary compensation payments. Unlike the case at bar, no hearing was held, because the Acting Director dismissed the application for a hearing for lack of issues in dispute. The Acting Director acknowledged in *Powell* that § 36–320(c), standing alone, appears to give any interested party an unqualified right to a hearing upon request. She observed, however, that such a reading would render § 36–315(a) and (h) virtually meaningless. She pointed out that § 36–315(a), the Act's mechanism for disposing of undisputed claims, requires the employer to pay compensation without an award unless the employer controverts its liability to pay. Administering the program this way, she stated, provides "an efficient, workable framework designed to

conserve economic and administrative resources." *Powell, supra,* at 3. She noted her agreement with Professor Larson's statement that "the successful administration of a compensation law depends to a much greater extent upon the machinery adopted for disposing of the undisputed claim than upon the methods of procedure employed in litigation of the contested case." *Id.* (quoting 3 A. LARSON, THE LAW OF WORKMEN'S COMPENSATION § 82.10 (1983) (citation omitted)). The Council's decision to rely on voluntary payments by employers without an award, she concluded, represented a rational policy choice.

In addition, the Acting Director in *Powell* concluded that reading § 36–320(c) as requiring a hearing upon request would conflict with the import of § 36–315(h), which gives the Mayor the power to decide whether a hearing is necessary. She observed that, where an employer is making voluntary payments, § 36–315(h)(1) gives the Mayor discretion to "make such investigations, cause such medical examinations to be made, or hold such hearings, and take such further action as he considers will properly protect the rights of all parties." D.C. Code § 36–315(h)(2) (1988). Where an employer has controverted, suspended, or stopped payments, § 36–315(h)(2) requires the Mayor to take any of these actions he deems appropriate. The Acting Director emphasized that under neither provision is a hearing automatically required when, in the Mayor's estimation, the circumstances do not warrant one.

The Acting Director further noted in *Powell* that § 36–320 is entitled "Procedure in respect of claims" and has for its purpose the identification of the specific procedures to be followed in connection with the filing of a claim for compensation. She pointed out that her interpretation of § 36–320(c) is consistent with § 36–314(a), "Time for filing claims," which does not contemplate that a claim will be filed until after voluntary payments have ceased.[2]

---

2. Section 36–314(a) provides:

(a) Except as otherwise provided in this section, the right to compensation for disabili-

She concluded that "if during the period of voluntary payments there is no valid claim for compensation, ... there can be no attendant hearing. By permitting the filing of claims following the last voluntary payment, the Council clearly did not envision the filing of all, if any, claims during the voluntary payment period." *Powell, supra,* at 6–7.

Petitioner Thomas argues in this case, as did the claimant in *Powell,* that because § 36–320(c) specifies that "[u]pon application of any interested party the Mayor shall order a hearing within a reasonable time," she, as an "interested party," has the right to a formal hearing with the resulting award or, in lieu thereof, a compensation order making the undisputed material facts binding.[3] Thomas contends that her interpretation of § 36–320(c), rather than being inconsistent with the Mayor's powers under § 36–315(h), complements that section by providing an additional means of triggering a hearing where payments are being made without an award, *i.e.,* the request of an interested party. She would construe § 36–315(a) not as a mandate for employers to make voluntary payments without an award unless compensation is controverted, but as a provision setting forth the procedures to be followed in paying compensation.

 In interpreting a statute and the terms thereunder, we follow certain established principles of statutory construction. A basic principle is that each provision of the statute should be construed so as to give effect to all of the statute's provisions, not rendering any provision superfluous. *Tuten v. United States,* 440 A.2d 1008, 1010 (D.C. 1982), *aff'd,* 460 U.S. 660, 103 S.Ct. 1412, 75 L.Ed.2d 359 (1983); 2A SUTHERLAND, STATUTORY CONSTRUCTION § 46.05 (N. Singer 4th ed. 1984) [hereinafter "2A SUTHERLAND"]. Thus, "[s]tatutory provisions are to be construed not in isolation, but together with other related provisions." *Carey v. Crane Serv. Co.,* 457 A.2d 1102, 1108 (D.C. 1983) (quoting *United Mine Workers of America v. Andrus,* 189 U.S. App.D.C. 110, 114, 581 F.2d 888, 892 (1978)). Next, we consider the meaning of the terms and phrases of the statute, again, in the context of the entire statute and its policies and objectives. *Carey, supra,* 457 A.2d at 1105 (quoting *Don't Tear It Down v. Pennsylvania Ave. Dev. Corp.,* 206 U.S.App.D.C. 122, 128, 642 F.2d 527, 533 (1980)). Finally, if a statute is suscep-

ty or death under this chapter shall be barred unless a claim therefor is filed within 1 year after the injury or death. If payment of compensation has been made without an award on account of such injury or death, a claim may be filed within 1 year after the date of the last payment. Such claim shall be filed with the Mayor. The time for filing a claim shall not begin to run until the employee or beneficiary is aware, or by the exercise of reasonable diligence should have been aware, of the relationship between the injury or death and the employment. Once a claim has been filed with the Mayor, no further written claims are necessary.

**3.** Petitioner also argues that *Intercounty Construction Co. v. Walter,* 422 U.S. 1, 12, 95 S.Ct. 2016, 2022, 44 L.Ed.2d 643 (1975), and *Matthews v. Jeffboat, Inc.,* 18 BRB 185, 187 (1986), both decided under the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), support her position that she is entitled to a hearing under § 36–320. Section 36–320 of the District of Columbia Workers' Compensation Act of 1979 was modeled after § 19 the Longshoremen's Act, 33 U.S.C. § 919. Committee Report, Bill 3–106, the "District of Columbia Workers' Compensation Act of 1979," at 18 (Jan-

uary 29, 1980). Prior to the 1979 Act, District of Columbia workers were covered by LHWCA. Petitioner, thus, would have us apply the rule of statutory construction that where a state legislature models a statutory provision after a federal statute, it is presumed to adopt prior federal court constructions of the federal statute. 2A SUTHERLAND, *supra* note 3, at § 52.02. *See Lenaerts v. District of Columbia Dep't of Employment Servs.,* 545 A.2d 1234, 1237, (D.C.1988); *Meiggs v. Associated Builders,* 545 A.2d 631, 635 (D.C.1988); *see also Estep v. Constr. Gen., Inc.,* 546 A.2d 376 (D.C.1988); *O'Connell v. Maryland Steel Erectors, Inc.,* 495 A.2d 1134 (D.C.1985), *cert. denied,* 475 U.S. 1066, 106 S.Ct. 1378, 89 L.Ed.2d 603 (1986).

Petitioner's argument fails, however, because neither case cited dealt with a factual situation analogous to hers, nor did either interpret § 919(c). *Intercounty Construction* involved a *controverted* claim for permanent total disability benefits. In *Matthews,* a number of issues concerning the employee's right to compensation were contested. In either situation, a § 36–320(c) hearing would still be available under the interpretation we approve.

tible of more than one interpretation, this court will defer to the interpretation given by the agency charged with administering the statute, unless the agency's interpretation is unreasonable in light of the prevailing law, inconsistent with the statute, or plainly erroneous. *MCM Parking Co. v. District of Columbia Dep't of Employment Servs.*, 510 A.2d 1041, 1044 (D.C. 1986); *Hughes v. District of Columbia Dep't of Employment Servs.*, 498 A.2d 567, 570 (D.C.1985); *Gomillion v. District of Columbia Dep't of Employment Servs.*, 447 A.2d 449, 451 (D.C.1982).

■ Although Thomas' construction of the statute finds support in the language of § 36–320(c), especially when it is read in isolation, the Department's conflicting interpretation is well reasoned and consistent with the meaning of the statute, considered as a whole. We note that in *Powell*, on which the Acting Director principally relied for her decision in this case, she analyzed § 36–320(c) thoroughly, both in terms of its plain meaning and its interplay with other sections of the Act. The Acting Director also weighed the policies and goals of the voluntary compensation program before determining that § 36–320(c) did not confer a right to a hearing absent a dispute. Under these circumstances, we defer to the Department's reasonable interpretation of the statute and hold that Thomas was not entitled to invoke the hearing and award procedures of § 36–320(c).[4]

Thomas next contends that even if she is not entitled to a hearing and award as a matter of right under § 36–320(c), the Department abused its discretion by failing to issue her a compensation order pursuant to its discretionary powers under § 36–315(h). A governmental agency given broad authority to administer a statutory program must be accorded wide latitude in making

its discretionary decisions concerning the manner in which it will enforce its program. *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council*, 435 U.S. 519, 543, 98 S.Ct. 1197, 1211, 55 L.Ed.2d 460 (1978) ("administrative agencies 'should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties'") (quoting *FCC v. Schreiber*, 381 U.S. 279, 290, 85 S.Ct. 1459, 1467, 14 L.Ed. 2d 383 (1965)); *Porter County Chapter v. Nuclear Regulatory Comm'n*, 196 U.S. App.D.C. 456, 462, 606 F.2d 1363, 1369 (1979) ("[t]he agency is not bound to launch full-blown proceedings simply because a violation of the statute is claimed"); *Niagara Mohawk Power Corp. v. FPC*, 126 U.S. App.D.C. 376, 382, 379 F.2d 153, 159 (1967) ("the breadth of agency discretion is, if anything, at zenith when the action assailed relates primarily not to the issue of ascertaining whether conduct violates the statute, or regulations, but rather to the fashioning of policies, remedies and sanctions, including enforcement and voluntary compliance programs"). Only if a decision is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law should this court interfere. D.C. Code § 1–1510(a)(3)(A) (1987).

We find no abuse of discretion in this case. The Department adhered to its usual policy, enunciated in *Powell*, of not holding a hearing and issuing an award where voluntary payments are being made. We conclude that this decision was reasonable and consistent with the purposes of the statute. As the employer points out, if petitioner were granted an award to formalize the voluntary payments she is currently receiving, the parties would be forced to litigate any modifications made necessary by a change of conditions. Such a result could

---

4. Not before us in this case is an issue which might be raised by an employer willing to make voluntary compensation payments to an injured employee if the employer applied for a hearing and formal award in order to protect its subrogation rights against a third party tortfeasor. *See Carey v. Crane Serv. Co.*, 457 A.2d 1102 (D.C.

1983). We do not address the issue whether an employer has available any means of bringing about a formal award in order to protect against the lapse of the employer's right to recover payments from the third party responsible for the injury.

burden both parties as well as the administration of the compensation system.

Nor does our holding leave petitioner Thomas without a remedy. If Thomas' employer stops or suspends payments at a later date, she would be entitled to seek a hearing under § 36–315(h)(2). Reinforcing this entitlement are the provisions of § 36–314(a), pursuant to which she may file a claim for compensation after she has received her last voluntary payment, thus setting in motion the procedures of § 36–320.

AFFIRMED.