**ALLIED SECURITY, INC., et al., Petitioners,**

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent.**

**Tesfa Bekele, Intervenor.**

**No. 90–AA–685.**

District of Columbia Court of Appeals.

Argued Nov. 12, 1992.
Decided March 5, 1993.

James G. Healy, Rockville, MD, for petitioners.

Charles L. Reischel, Deputy Corp. Counsel, with whom John Payton, Corp. Counsel, Washington, DC, filed a statement in lieu of brief, for respondent.

Michael V. Kowalski, Washington, DC, for intervenor.

Before FERREN, KING, and SULLIVAN, Associate Judges.

SULLIVAN, Associate Judge:

Petitioners, Allied Security, Inc. ("Allied"), and its insurer, Liberty Mutual Insurance Company ("Liberty"), seek review of the decision of the District of Columbia Department of Employment Services ("the Agency"), affirming a hearing examiner's order awarding Tesfa Bekele ("Bekele") workers' compensation benefits pursuant to the District of Columbia Workers' Compensation Act, D.C.Code §§ 36–301—345 (1988 and 1992 Supp.). Petitioners raise two principal issues on appeal. First, they contend that the Agency erred by holding that an injured employee's medical report, filed with the District of Columbia Office of Workers' Compensation ("OWC") by a physician of that employee, constitutes the filing of a valid claim for workers' compensation benefits within the meaning of D.C.Code § 36–314(a) (1988) and 7 DCMR §§ 207.1 & 299.1 (1986). Second, petitioners contend that the Agency erred by holding that a statutory penalty should be assessed against them pursuant to D.C.Code §§ 36–315(d) and (e) (1988) because of their failure to file a formal Notice of Controversion of the claim pursuant to 7 DCMR § 210 (1986). Because the Agency did not fully address and resolve these issues within the meaning of its enabling statute and regulations, we vacate the decision and remand the case to the Agency for further proceedings.

I.

On August 19, 1986, Bekele sustained an injury to his back when he attempted to straighten a chair mat at his security guard station at the World Bank while in the employment of Allied. Allied filed an Employer's First Report of Injury with OWC[1] on October 17, 1986. Liberty voluntarily paid workers' compensation benefits for Bekele from August 19, 1986 to January 7, 1987, when Bekele returned to employment as a security guard with Allied. In January 1987, Allied filed the Employer's Notice of Final Payment of Benefits.[2] On January 8, 1987, medical reports of Bekele's physician, Dr. Francisco Ferraz, were filed with OWC.

Bekele continued to work as a security guard with Allied until January 1988. At that time, he requested that Allied transfer him to a different geographic area, citing as his reasons that he had received a back injury while working at the World Bank and that on occasion he had to take a taxi home late at night. After efforts failed to

---

1. 7 DCMR § 203.1 (1986) provides:

    Under § 33(a) of the Act [§ 36–332(a), D.C.Code, 1981 ed.], all employers shall give a written report of every employee's injury or death to the Office within ten (10) working days of the injury or death.

2. 7 DCMR § 209.7 (1986) provides:

    If final payment of compensation is the reason for stopping payment, Notice of Final Payment shall be filed by the insurer with the Office within sixteen (16) working days, in lieu of Notice of Controversion.

find Bekele a light-duty position to which he could be transferred, his employment with Allied was terminated on January 29, 1988.[3]

On May 24, 1988, counsel for Bekele filed a formal claim with OWC for workers' compensation benefits for Bekele[4] and a hearing was conducted on January 12, 1989. Thereafter, the hearing examiner issued a compensation order in which she found that: (1) no official claim form for workers' compensation benefits was timely filed with OWC; (2) the medical reports of Dr. Francisco Ferraz, Bekele's treating physician, received by OWC on January 8, 1987, constituted the timely filing of a claim for benefits;[5] and (3) Bekele was entitled to workers' compensation benefits. With regard to the medical reports, the examiner held:

> These medical reports [of Dr. Ferraz] were filed with the Mayor within the statutory time period. I am persuaded that the medical [reports] are sufficient to constitute a claim[,] therefore this case is not barred by to [sic] Section 36–314.

Hearing Examiner's Order dated March 10, 1989 at 4.

The hearing examiner, thereupon, entered an award of workers' compensation benefits in favor of Bekele: he was awarded temporary total disability benefits from February 6, 1988 through March 18, 1988, and temporary partial disability benefits from March 19, 1988 to the present and continuing.

The hearing examiner also assessed a penalty against Allied for its failure to file a timely Notice of Controversion of Bekele's claim. On appeal, the Director of the Agency affirmed the hearing examiner's decision. This appeal ensued.

## II.

### A. *The Claim*

D.C.Code § 36–314(a) provides in relevant part as follows:

> Except as otherwise provided in this section, the right to compensation for disability or death under this chapter shall be barred unless a *claim* therefor is filed within 1 year after the injury or death. *If payment of compensation has been made without an award on account of such injury or death, a claim may be filed within 1 year after the date of the last payment.* Such claim shall be filed with the Mayor.

(Emphases added.)

\*   \*   \*   \*   \*   \*

7 DCMR § 207.1 provides as follows:

> In accordance with § 15 of the Act [§ 36–314, D.C. Code, 1981 ed.], all

---

3. The termination letter from Allied to Bekele, dated January 26, 1988, and signed by Capt. Abdul Shaheed, Project Manager, IDB, stated:

> The gist of your letter [requesting transfer/change of shift] was that the duty requirements of your shift had begun to aggravate a back injury which you received while working at the World Bank.... You submitted your doctor's report ... which stated that you have a back problem and require light duty with limited lifting and exercise....
>
> It has now been over three weeks since I received your letter and, althought [sic], the District Office has been unable to find a transfer site at this time, I have reached the point where I can no longer continue the arrangements [light duty with coworkers doing Bekele's patrol duties] that have been made for you. The client, as well as the physical requirements of the facility, demand that everyone assigned here be physically fit for duty. Your doctor's report confirms that you no longer meet the duty requirements for this site.

> Therefore, you will be allowed to complete this week's schedule, which ends on Friday, January 29....
>
> I would like to ... thank you for the good work that you have done, and say that I am sorry about your injury and wish you success in re-assignment.

4. At oral argument before this court, counsel stated that his routine practice was to immediately file a formal claim for benefits for a new client regardless of whether the client had previously filed a claim or not.

5. No evidence was produced at the hearing and no findings were made by the examiner or the Agency that the medical reports were filed with OWC pursuant to Bekele's request or authorization. At oral argument before this court, no party disputed Bekele's contention that his treating physician transmitted the medical reports to OWC.

claims shall be made by injured *employees* or their *beneficiaries* in writing within one (1) year of the injury or death, except as hereafter provided. (Emphases added.)

\* \* \* \* \* \*

7 DCMR 299.1 defines "claim" as follows:

[A]n application for benefits made by an injured *employee* or his or her *beneficiary* under §§ 9 and 10 of the Act [§§ 36–308 and 36–309, D.C. Code, 1981 ed.]. (Emphases added.)

\* \* \* \* \* \*

■ This court will defer to an agency's interpretation of the statute which the agency administers, unless that agency's interpretation is unreasonable in light of prevailing law, inconsistent with the statute, or plainly erroneous. *Harris v. District of Columbia Dep't of Employment Servs.*, 592 A.2d 1014, 1016 (D.C.1991) (citations omitted); *Thomas v. District of Columbia Dep't of Employment Servs.*, 547 A.2d 1034, 1037–38 (D.C.1988); *Anthony v. District of Columbia Dep't of Employment Servs.*, 528 A.2d 883, 884 (D.C.1987). We are "limited to determining whether the Director's order is in accordance with the law and supported by substantial evidence in the record." *King v. District of Columbia Dep't of Employment Servs.*, 560 A.2d 1067, 1072 (D.C.1989). We recognize that an agency charged with administering a particular statute is bound by its own regulations, *see George Hyman Constr. Co. v. District of Columbia Dep't of Employment Servs.*, 498 A.2d 563, 565 (D.C.1985); accordingly, we will not accept an agency interpretation which contradicts the plain language of the regulation itself. *See Dell v. District of Columbia Dep't of*

*Employment Servs.*, 499 A.2d 102, 106 (D.C.1985); *see also J. Parreco & Son v. District of Columbia Rental Hous. Comm'n*, 567 A.2d 43, 45–46 (D.C.1989) ("[T]he intent of the legislature is to be found in the language which it has used.").

■ In order to resolve the issue of whether Bekele is entitled to workers' compensation benefits, we must first determine whether the filing of his medical reports with OWC, *by his physician*, independent of any request or directive from Bekele, constitutes the filing of a bona fide claim *by Bekele* for workers' benefits within the meaning of D.C.Code § 36–314(a) and 7 DCMR §§ 207.1 & 299.1. Our review is impeded, however, because, although the Agency found that "no official claim form for workers' compensation benefits was timely filed with OWC," the Agency, nevertheless, concluded that "the medical reports of Dr. Ferraz [Bekele's physician] constituted a timely filing of a claim." In reaching that conclusion, neither the hearing examiner nor the Agency made any attempt to reconcile that decision with the regulations that bind the Agency and mandate that *only* an injured employee or a beneficiary of that employee may file a claim for workers' benefits.[6] *See* 7 DCMR §§ 207.1 & 299.1, *supra; see also George Hyman Constr. Co., supra*, 498 A.2d at 565 ("an agency is bound by its own regulations"). Indeed, the Agency, dismissing as "not critical" the manner in which the claim was filed, concluded as follows:

The reports by Dr. Ferraz clearly document claimant's problems due to his work-related injury. Dr. Ferraz relates his medical findings surrounding claimant's injury and the physician even opines that he recommends surgery. *It is not critical whether claimant or his physician actually sent the reports to*

---

**6.** In affirming the examiner's decision, the Agency primarily relied on 2B ARTHUR LARSON, WORKERMEN'S COMPENSATION LAW § 77.31 (1989) ("Professor Larson comments that many courts are very generous in allowing almost any writing to constitute a claim."). Agency Decision at 3. The Agency also relied on other authority of dubious precedential value, including the decision in *Peerless Insurance Co. v. Hill*, 309 F.Supp. 189 (D.Minn.1969) ("[T]here is no requirement that the writing explicitly state a

claim, as all that is necessary is that it must be reasonably inferred from the writing that a claim is being made."). *Id.* We note that *Peerless* involved the filing of a writing by the *injured worker* with the United States Department of Labor, pursuant to the Longshoremen's and Harbor Workers' Compensation Act. Thus, the factual predicate underlying that court's decision is distinguishable from that in the present case.

*OWC.* Employer received these reports and what is important is that the reports were filed with the proper adjudicating agency indicating that claimant had a severe and an ongoing problem.

(Emphasis added.) Agency's Decision at 4. Because the Agency's decision on this issue appears to conflict with its enabling statute and the Agency's own regulations, a remand of this case is required to enable the Agency to provide further explication and rationale for its decision.[7] *See* D.C.Code § 36–314(a); 7 DCMR §§ 207.1 & 299.1. *See also Dell, supra,* 499 A.2d at 106; *George Hyman Constr. Co., supra,* 498 A.2d at 565.

### B. *The Notice of Controversion*

D.C.Code §§ 36–315(d) and (e) provide:
(d) If the employer controverts the right to compensation, he shall file with the Mayor, on or before the 14th day after he has knowledge of the alleged injury or death and its relationship to the employment, a notice in accordance with a form prescribed by the Mayor stating that the right to compensation is controverted ... and the grounds upon which the right to compensation is controverted.
(e) If any installment of compensation payable without an award is not paid within 14 days after it becomes due, as provided in subsection (b) of this section, there shall be added to such unpaid installment an amount equal to 10 percent thereof, which shall be paid at the same time as, but in addition to, such installment, unless notice is filed under subsection (d) of the section....

\*   \*   \*   \*   \*   \*

7 DCMR § 209.7 provides:
If final payment of compensation is the reason for stopping payment, Notice of Final Payment shall be filed by the insurer with the Office within sixteen (16) working days, *in lieu of Notice of Controversion.*

(Emphasis added.)

\*   \*   \*   \*   \*   \*

7 DCMR § 210.1 (1986) provides:
Under § 16(d) of the Act [§ 36–315(d), D.C. Code, 1981 ed.], an employer may controvert liability to pay benefits in accordance with §§ 9 and 10 of the Act [§ [sic] 36–308 and 36–309, D.C. Code, 1981 ed.].

In addition to directing the petitioners to pay compensation benefits for Bekele, the hearing examiner also assessed a penalty against petitioners in the amount of ten percent of the back benefits awarded to him. The assessment of the penalty was affirmed by the Agency on the ground that petitioners were obligated to file a Notice of Controversion after the filing of Bekele's claim by his attorney on May 24, 1988. The irony of this penalty assessment, however, is that the Agency found that the May 24 filing by Bekele's attorney was *untimely* and did not constitute the filing of a valid claim for benefits. Moreover, it is uncontroverted that upon making the final voluntary compensation payment to Bekele in January 1987, for the identical injury, the petitioners had properly filed a Notice of Final Payment with OWC in lieu of the Notice of Controversion, pursuant to 7 DCMR § 209.7. Nonetheless, in assessing the penalty, the Agency, citing no authority whatsoever, but, rather, relying on the language of the claim form,[8] concluded that:

the filing of initial and/or progress medical reports to comply with statutory filing requirements.

**7.** We also note that physicians treating injured workers are required by statute and regulations to file initial medical reports and progress reports with OWC. *See* D.C.Code § 36–307; 7 DCMR §§ 212.4 & 212.5 (1986). Thus, on remand, the agency is directed to set forth clearly the rationale and authority it relies upon for any conclusion that the filing of a medical report with OWC, without more, by a physician of an injured employee, could properly constitute a *bona fide* claim for workers' compensation benefits in addition to, or as distinguished from,

**8.** Arguably, the claim form in question did not even pertain to Bekele's employer because the language on the face of the claim form directs an employer *who has no previous knowledge of the claimant's injury,* either to commence voluntary payments of workers' compensation or to file a Notice of Controversion with OWC. In the present case, not only did the employer have

The [untimely claim] form clearly specifies that if an employer decides not to begin voluntary payments within 14 days, it must file a notice of controversion or be subject to penalties.

Agency's Decision at 6.

The legal effect of the Agency's ruling, if allowed to stand, would be that an employer, after payment of final compensation to an injured employee and the filing of a proper Notice of Final Payment with OWC, can nevertheless be assessed a statutory penalty by OWC for the employer's failure to file a notice of controversion contesting a subsequently filed, *time-barred* claim for workers' compensation benefits for the same injury. Since the agency has cited no authority, statutory[9] or otherwise, to support such a ruling, and we are aware of none, we direct the Agency on remand of this case to reconsider this ruling and to reconcile it, with supporting rationale and explication, within the meaning of its enabling statute and regulations. Accordingly, we vacate the decision of the Agency and remand the case for further proceedings consistent with this opinion.[10]

*So ordered.*

previous knowledge of Bekele's injury, but it had previously paid benefits to Bekele and had filed a Notice of Final Payment with OWC in lieu of a Notice of Controversion pursuant to 7 DCMR § 209.7.

9.  Neither D.C.Code § 36–315, which addresses payment of compensation, nor D.C.Code § 36–320, which addresses the procedures "in respect of claims," requires the filing of a notice of controversion after the filing of an untimely formal claim for workers' benefits.

10. In remanding this case for further consideration, we express no opinion on whether the decisions reached by the Agency are necessarily wrong. Our concern, as previously expressed, is that the decisions rendered, without further explanation, appear to conflict with the Agency's enabling statute and/or its regulations. Accordingly, on remand, the Agency shall explain fully the rationale in support of its decisions. The Agency is also free to determine whether any alternative rationale should be applied to support its decisions or to reverse the decisions if it concludes that reversal is warranted.