**Ralph N. SINGER, Petitioner,**

v.

**DISTRICT OF COLUMBIA BOARD OF MEDICINE, Respondent.**

**No. 91–AA–775.**

District of Columbia Court of Appeals.

Argued May 13, 1993.

Decided Oct. 14, 1993.

---

Alan Dumoff, Washington, DC, for petitioner.

Mary L. Wilson, Asst. Corp. Counsel, with whom John Payton, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, DC, were on the brief, for respondent.

Before FERREN and SULLIVAN, Associate Judges, and GALLAGHER, Senior Judge.

SULLIVAN, Associate Judge:

Petitioner, Ralph N. Singer, a licensed chiropractor, appeals the final order of the District of Columbia Board of Medicine ("the Board") denying his application for certification pursuant to 17 DCMR § 4811.3 (1990)[1] to perform ancillary chiropractic procedures.[2]

The Board denied petitioner's application primarily because he had not taken and passed the tests required by the licensing

---

1. 17 DCMR § 4811.3 provides that:

 To qualify for ancillary procedure certification, a chiropractor who was licensed in the District prior to March 25, 1986 (the effective date of the Act), who did not take the physiotherapy section of the national examination administered by the NCBE [sic]; shall within one (1) year from September 2, 1988:
 (a) Receive a passing score of seventy-five (75) on a special examination in the subject of physiotherapy administered by the NCBE [sic]; and
 (b) Receive a passing score of seventy-five (75) on an examination administered by the Committee which tests the applicant's knowledge and practical skills in physiotherapy.

2. Ancillary chiropractic procedures are defined in 17 DCMR § 4811.1 (1990) as including "activities ... preparatory or complementary to chiropractic adjustment of the spine[.]" These procedures include massages, traction, muscle stimulation, hot and cold packs, hydrotherapy, diathermy, ultra sound, exercise programs, and other techniques of physiotherapy.

regulations—namely, 1) the physiotherapy section of a national examination administered by the National Board of Chiropractic Examiners ("the NBCE") and 2) a related test of knowledge and practical skills in physiotherapy administered by the Board's Advisory Committee on Chiropractic ("the Advisory Committee"). *See* 17 DCMR § 4811.3(a) and (b),[3] note 1, *supra.*

Petitioner contends that the Board's interpretation of 17 DCMR § 4811.3 as applied to him was "arbitrary and capricious," because the Board: 1) rejected his application despite the District's failure to make available a written examination which the District's own regulations required it to do; 2) interpreted its own regulations to require him to have taken the written examination before being permitted to sit for the practical examination; 3) refused to give due consideration to his alternative demonstrations of competence; and 4) refused to give due consideration to providing certification to him based upon reciprocity. Petitioner's arguments are unpersuasive. Accordingly, we affirm.

## I.

### *The Facts*

The essential facts found by the Board and unchallenged on appeal are as follows: Petitioner received his chiropractic license in the District of Columbia in 1983; he has been an active member of the Advisory Committee since June 1989. He has not taken and passed the physiotherapy section of the NBCE's national exam, nor has he taken and passed the special practical exam on physiotherapy administered by the Advisory Committee. In August 1989, petitioner submitted a letter to the Department of Consumer and Regulatory Affairs ("DCRA") applying for ancillary procedure

certification in the District of Columbia. The letter stated that petitioner had taken an examination in Florida that qualified as an NBCE physiotherapy examination; it also stated that petitioner was pursuing this route because an application form had not been developed for the Advisory Committee's practical exam and he was concerned that he would not qualify for ancillary procedure certification prior to the Board's September 2, 1989 deadline. See note 3, *supra.* A DCRA official responded to petitioner's letter informing him that the Advisory Committee was in the process of developing an application form and that petitioner's letter would "remain in the file until such time as the application package has been completed."

On April 2, 1990, petitioner submitted, on the newly-prescribed form, an application to DCRA for certification to perform ancillary chiropractic procedures in the District. As with the August 1989 letter, petitioner submitted results of the Florida state examination which included a section on physiotherapy; he also requested to take the practical exam.

DCRA did not schedule or provide for the administration of a special practical examination by the NBCE between September 2, 1988, and September 2, 1989. The NBCE, however, did continue its procedure of offering the national examination, including physiotherapy, twice a year. Petitioner was aware of the Advisory Committee's informal decision that the physiotherapy portion of the NBCE would satisfy the examination requirement of 17 DCMR § 4811.3(a). Petitioner neither registered with nor made any inquiry of the NBCE to sit for the physiotherapy portion of its examination although he was aware that passing the physiotherapy portion of the

---

**3.** New regulations governing the licensing of chiropractors were adopted in 1988 by the Director of the Department of Consumer & Regulatory Affairs ("DCRA"). *See* 17 DCMR §§ 4800–4899.2 (1990) ("Chapter 48"). These regulations established, *inter alia,* that a separate *certification* was necessary for a chiropractor to perform ancillary chiropractic procedures. *See generally* 17 DCMR § 4811. A chiropractor, such as petitioner, who was licensed

prior to March 25, 1986 (the effective date of the D.C. Health Occupations Revision Act of 1985 ("the Act")) had one year from September 2, 1988 (the date of the final rulemaking) to comply with the requirements for certification. *See* 17 DCMR § 4811.3, note 2, *supra.* 17 DCMR §§ 4811.2 & 4811.3 clearly provide that the requirements for licensed chiropractors and new chiropractors to qualify for ancillary procedures certification are essentially the same.

regularly-scheduled NBCE would satisfy the requirements of 17 DCMR § 4811.3(a).

Moreover, NBCE offered to schedule a special examination in the District of Columbia on September 8, 1990, and invited all interested parties to apply by June 15, 1990. Petitioner received notice of this special examination but failed to apply to take the examination. This examination was scheduled for a definite time and place and, but for the lack of response from candidates, would have been administered.

Petitioner was present at the Advisory Committee meetings when the administrative delay in scheduling the special examination was discussed and when it was determined that the September 2, 1989, deadline for taking the examination would not be enforced until the special examination was administered to qualifying parties. Moreover, petitioner sat on the Advisory Committee when at least two other applications for ancillary certification were reviewed and the 1989 examination deadline was not enforced. Petitioner knew that those applicants were encouraged to take the 1990 special examination to satisfy the requirement.

## II.

### *The Standard of Review*

■ As we recently noted in *Allied Security, Inc. v. District of Columbia Dep't of Employment Servs.*, 621 A.2d 824, 827 (D.C.1993): "This court will defer to an agency's interpretation of the statute which the agency administers, unless that agency's interpretation is unreasonable in light of prevailing law, inconsistent with the statute, or plainly erroneous." *See also Harris v. District of Columbia Dep't of Employment Servs.*, 592 A.2d 1014, 1016 (D.C.1991); *Joseph v. District of Columbia Bd. of Medicine*, 587 A.2d 1085, 1088 (D.C.1991); *Roberts v. District of Columbia Bd. of Medicine*, 577 A.2d 319, 326

(D.C.1990). "The words of a regulation should be construed according to their ordinary sense and with the meaning commonly attributed to them." *Superior Beverages, Inc. v. District of Columbia Alcoholic Beverage Control Bd.*, 567 A.2d 1319, 1322 (D.C.1989) (citations and interior quotes omitted). "[W]e should defer to any reasonable construction of a statute or regulation, even if our own interpretation would be different if we were proceeding on a clean slate...." *Id.* at 1325. It is the duty of the Board to protect the general public from unqualified health professionals. *Roberts, supra*, 577 A.2d at 327. Moreover, determinations made by the Board demand the "type of agency expertise and informed discretion towards which we generally show great deference." *Joseph, supra*, 587 A.2d at 1088. With these principles in mind, we examine the rulings of the Board to determine whether they warrant our deference *vel non*.

## III.

### A. *Rejection of Application Despite Delay in Special Examination*

■ Petitioner contends that the Board's denial of his application for ancillary procedures certification was "arbitrary and capricious," because the District of Columbia failed to make available a "special examination" on the subject of physiotherapy administered by NBCE within the one-year period provided for by 17 DCMR § 4811.3. There is no dispute that the "special examination" by which petitioner could have complied with 17 DCMR § 4811.3(a) was not in place during the designated period. As the Board's conclusions of law make clear, however, petitioner could have otherwise met the statutory requirement in question by passing either of the two scheduled national NBCE physiotherapy examinations; he knew he could have done so; and, indeed, he can still do so.[4] Thus, we cannot

---

4. As the Board stated:

[Petitioner] is an active member of the ... Advisory Committee and was aware that the deadline set by 17 DCMR § 4811.3(a) was not being enforced by the Advisory Committee due to administrative delay in arranging the

test. [Petitioner] also knew that the [Advisory] Committee had determined that any applicant who took the NBCE's physiotherapy section at its regularly scheduled examination in lieu of the "special" examination would be eligible to apply for certification and that any

say that the Board's ruling based on the statute which it administers is "unreasonable in light of prevailing law, inconsistent with the statute, or plainly erroneous." *Allied Security, Inc., supra,* 621 A.2d at 827. Nor can we say that the Board's ruling is not consistent with its duty to protect the general public from unqualified health professionals. *See Roberts, supra,* 577 A.2d at 327.

### B. Interpretation of Regulations to Require Written Exam First

■ Petitioner also challenges the Board's interpretation of 17 DCMR § 4811.3 as requiring him to take the national NBCE exam *prior* to taking the District's practical exam. He contends that there is "no hint" of a chronological requirement in the entire Chapter 48 governing the licensing of chiropractors. To the contrary, consistent with the similarity of requirements for chiropractors licensed prior to and after March 25, 1986, *see* 17 DCMR §§ 4811.2 & 4811.3, the Board properly recognized and relied on 17 DCMR § 4811.4 [5] in support of its interpretation. Accordingly, the Board concluded that § 4811.4 requires that "[t]he NBCE results *shall* be submitted with the application for certification which leads to sitting for the Advisory Committee examination." We can hardly quibble with such a practical holding. To hold otherwise, as respondent suggests, would lead to an unusual, and indeed, improvident procedure and expenditure of time by applicants and professional staff as well whereby an applicant would

applicant who sat for the NBCE's special examination scheduled in 1990 would also be eligible. [Furthermore], the same information would have been and was available to any applicant. Also, [petitioner], even in the absence of his position of advantage, could reasonably be expected to understand, or at least inquire, that the offer of the special NBCE examination in 1990 was offered to allow those affected candidates a meaningful opportunity to fulfill the requirements of 17 DCMR § 4811.-3(a), even though it was late. It must be assumed that the offering of the special examination was not a futile gesture by the Advisory Committee but served some function. [Petitioner] made a considered decision not to avail himself of those alternatives.

first demonstrate his or her practical expertise in a professional area without previously having passed, or even sat for, a written examination to test one's professional knowledge and competency.

### C. Alternative Demonstrations of Competence: The Waiver Theory

■ Next, petitioner contends that in view of the District of Columbia's "failure to provide the mechanisms the statutes and regulations require," the Board improperly refused to give due consideration to his alternative demonstrations of competence—namely, his certification to perform ancillary procedures in the State of Florida and also his experience as a chiropractor. The Board unequivocally rejected petitioner's attempt to characterize 17 DCMR § 4811 as a "grandfathering" provision and thereby allow him to rest on his Florida credentials. In support of its ruling, the Board relied on "the clear language of the rule [§ 4811.3]." See note 1, *supra.* As the Board stated:

> There simply is no basis for a belief that the rule permits one to be qualified on the basis of a license held in another state or on the basis of being an "experienced" chiropractor. What the rule does, when read in conjunction with 17 DCMR § 4811.2, is set out the same requirements for those licensed prior to March 25, 1986, as those licensed subsequent to that date with the exception that for the former group there was an

While it is true that 17 DCMR § 4811.3(a) could not be strictly complied with within the deadline dates, because the special examination was not available, the record is clear that it was not enforced against any applicant until the testing mechanism specifically required was in place. [Petitioner] could have met his requirement by either one of two methods and was fully aware that either was acceptable to the [Advisory] Committee.

5. 17 DCMR § 4811.4 provides:

A chiropractor applying for certification under this section shall submit the chiropractor's examination results, certified by the NBCE, to the Board.

opportunity to take the NBCE physiotherapy examination locally.

We are not persuaded by petitioner's arguments. Where, as here, the administrative construction is being made by "the [persons] charged with the responsibility of setting [the] statutory machinery in motion, of making the parts work efficiently and smoothly while they are yet untried and new," *Superior Beverages, Inc., supra*, 567 A.2d at 1325 (citations omitted), this court will accord "[great] weight" to the administrative construction. *Id.* at 1325. Thus, we will not substitute our judgment here for the Board's opinion.

### D. The Reciprocity Theory

 Finally, petitioner challenges the Board's decision in denying his application for ancillary procedure certification because it never properly considered his request for reciprocity based on his Florida qualifications. He contends that the District of Columbia has the authority to grant certification by reciprocity. In this regard, he relies on D.C.Code § 2–3305.7 (1988), which provides as follows:

> Each board, *in its discretion*, may issue a license by reciprocity or endorsement to an applicant:
>
> (1) Who is licensed or certified in good standing under the laws of another state with requirements which, in the opinion of the board, were substantial-

ly equivalent at the time of licensure to the requirements of this chapter, and which state admits health professionals licensed by the District in like manner; and

> (2) Who pays the applicable fees established by the Mayor.

*Id.* (emphasis added).

The Board, exercising its discretion, clearly analyzed whether 17 DCMR § 4811 could properly be considered a "reciprocity" provision and concluded that petitioner failed to establish his entitlement to certification by reciprocity for the same reasons he did not establish his entitlement to waiver of the exam requirement. That is, he failed to establish at the administrative level that Florida's licensing standards were "substantially equivalent at the date of the licensure" to the District of Columbia's requirements. D.C.Code § 2–3305.7 (citing *Roberts, supra*, 577 A.2d at 323 & n. 9). We find no error here.[6]

For the foregoing reasons, the judgment appealed from is hereby

*Affirmed.*

---

**6.** Assuming, *arguendo*, that petitioner's claim that the Board was biased against him is proper- ly before the court, the claim is devoid of merit.