DUPONT CIRCLE CITIZENS ASSOCIATION, et al., Petitioners,

v.

DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, Respondent,

Richard T. Ross, Intervenor.

No. 98–AA–801.

District of Columbia Court of Appeals.

Argued Oct. 26, 1999.

Decided April 27, 2000.

---

Richard B. Nettler, with whom G. Brent Connor, Washington, DC, was on the brief, for petitioners.

Gus Bauman, Washington, DC, for intervenor.

Charles L. Reischel, Deputy Corporation Counsel, filed a statement in lieu of brief for respondent.

Before REID and GLICKMAN, Associate Judges, and NEWMAN, Senior Judge.

GLICKMAN, Associate Judge:

On April 15, 1998, the Board of Zoning Adjustment (BZA) held a public hearing and granted the application of intervenor Richard T. Ross for a special exception to operate Swann House Bed and Breakfast as a home occupation with nine guest rooms and two full-time non-resident employees. The application was supported by Advisory Neighborhood Commission 1C and a large number of neighborhood residents, including the abutting neighbors of Swann House. The application was opposed, however, by several neighborhood residents, including petitioner Israel Stollman. It was also opposed by petitioner Dupont Circle Citizens Association (DCCA), a civic association some of whose members reside within the vicinity of Swann House. Their petition for review in this court principally challenges the BZA's interpretation of the Zoning Regulations to permit a bed and breakfast to host a limited number of guest-sponsored social events as a so-called "accessory use." We uphold the BZA's interpretation and accordingly affirm its order granting the application for a special exception.

Swann House is a large "Romanesque Revival" mansion constructed between 1883 and 1910. The house is located at 1808 New Hampshire Avenue, N.W., between Swann and S Streets, and has been certified by the State Historic Preservation Officer of the District of Columbia as a historic building which contributes to the character of the Dupont Circle Historic District. The neighborhood surrounding Swann House is zoned D/R–5–B, a moderate density designation permitting the widest range of urban residential development and compatible institutional and semi-public buildings, as well as diplomatic chanceries. See 11 DCMR §§ 350, 1001 (1995). The uses in the immediate vicinity include an embassy, fraternities and sororities, apartment buildings, hotels, private clubs and non-profit organizations, and rowhouses with either single- or multi-family occupancies.

Ross and his wife Mary L. Ross occupy Swann House as their principal residence. The house formerly was used as a rental apartment building. In 1996, the Department of Consumer and Regulatory Affairs (DCRA) issued Ross a home occupation permit to operate a bed and breakfast at Swann House. Questions arose, however, as to whether the DCRA had issued the permit in error, and Ross applied for a

new permit in early 1998. This time the Acting Zoning Administrator of DCRA denied the application on the ground that certain requirements of the regulations governing home occupations were not met, and Ross therefore would have to apply to the BZA for a special exception pursuant to 11 DCMR §§ 3108.1 [1] and 203.10.[2] The Rosses applied for such a special exception on February 17, 1998.

The Zoning Regulations set forth the requirements for home occupations in 11 DCMR § 203, and for home-based bed and breakfast operations specifically in subsection 203.8. Ross requested relief from only two of those requirements, a limitation on the maximum number of guest bedrooms [3] and a limitation on the number of non-resident employees.[4] The BZA found that this relief would be appropriate in view of the character of Swann House and the surrounding district and the needs of the bed and breakfast business, that it would not compromise the general purpose and intent of the Zoning Regulations, and that it could be granted without adverse impact on the neighborhood.

The heart of the controversy before the BZA concerned the Rosses' stated intention to permit registered guests to hold "small private social gatherings," such as weddings and other family celebrations, as part of the operation of the bed and breakfast. The Zoning Regulations do not address expressly the propriety of social events held at bed and breakfasts or, for that matter, at other uses permitted in residential districts (such as, for example, embassies, boarding houses, fraternities and sororities, private clubs, museums, churches and schools). The Rosses presented testimonial and documentary evidence that it is customary for bed and breakfasts to host social functions arranged by their guests as an incident of the business, and they offered to limit the number of such events to twenty-four a year and no more than five in any one month. They argued, and the BZA agreed, that this number of such guest-sponsored activities would be "customarily incidental and subordinate to" the bed and breakfast use, and thus permitted as an "accessory use." The term "use, accessory" is defined in 11 DCMR § 199.1 to mean "a use customarily incidental and subordinate to the principal use, and located on the same lot with the principal use." As discussed *infra*, accessory uses not otherwise expressly authorized by the Zoning Regulations are permitted in residentially zoned districts, in accordance with 11 DCMR § 202.10.

In addition to the limit on the number of guest-sponsored social events held at Swann House, the Rosses offered to agree to other conditions to meet neighbors' con-

---

1. In accordance with D.C.Code § 5–424(d) and (g)(2) (1994), the BZA is authorized in 11 DCMR § 3108.1 to grant special exceptions to the provisions of the Zoning Regulations "where, in the judgement of the Board, those special exceptions will be in harmony with the general purpose and intent of the Zoning Regulations and Maps and will not tend to affect adversely the use of neighboring property in accordance with the Zoning Regulations and Zoning Maps," subject to any special conditions stipulated elsewhere in Title 11.

2. 11 DCMR § 203.10 provides that a home occupation which is neither permitted nor prohibited by the regulations may be authorized as a special exception by the BZA as long as certain requirements are met. These requirements include compatibility with the residential neighborhood and the purposes and requirements of the home occupation regulations generally, with the proviso that no more than two of those requirements are modified to meet the needs of the applicant, and a limitation on the number of employees.

3. The regulations provide that a bed and breakfast certified by the State Historic Preservation Officer as contributing to the character of an historic district may have a maximum of six sleeping rooms. 11 DCMR § 203.8(c)(1). (Absent such a certification, no more than four sleeping rooms are allowed.)

4. The regulations provide that no more than one non-resident shall be "engaged or employed in" a home occupation. 11 DCMR § 203.4(d).

cerns about noise, parking and traffic problems that might be caused by social events at Swann House. With these limitations and conditions, the BZA found that the Rosses had satisfied their burden of proof and granted the Rosses a special exception to operate a bed and breakfast at Swann House.[5]

Petitioners challenge the BZA's predicate finding that hosting a limited number of guest-sponsored social events a year is permitted as an accessory use to the bed and breakfast use. Quoting the definition of an "accessory use" in 11 DCMR § 199.1, petitioners argue that a permissible accessory use must be customarily incidental and subordinate to the "principal use." Under the Zoning Regulations, however, home occupations such as bed and breakfasts are considered accessory uses; the principal use is deemed to be the residential use. *See* 11 DCMR § 203.1. Indeed, it was conceded, and the BZA found, that Swann House is "principally" used as the

Rosses' residence and that the bed and breakfast use is "secondary." Therefore, petitioners reason, since the bed and breakfast use is only an accessory use and not the principal use, hosting guest-sponsored social events cannot be permitted as an accessory use to that use Rather, petitioners contend, offering such "hospitality services" (as petitioners characterize them) constitutes in reality a second "home occupation ." Petitioners argue that this second home occupation is impermissible because it is neither permitted expressly by the Zoning Regulations (as the bed and breakfast use is) nor "customarily incidental" to the principal, residential use of Swann House. Additionally, petitioners argue that, viewed as subject to the home occupation regulations rather than as a permitted accessory use, hosting social functions for guests would contravene several specific zoning provisions from which the Rosses have not been granted a waiver.[6] Moreover, petitioners add, to procure such a waiver the Rosses would have to apply for

5. Specifically, the BZA granted the application for a special exception subject to the following conditions imposed to protect adjacent and nearby properties pursuant to 11 DCMR § 203.10(e):
 1. Only registered guests of the bed and breakfast shall be permitted to host social events;
 2. The number of social events shall not exceed 24 a year, with no more than five events in any one-month period;
 3. No event shall begin before 9:00 a.m. and all events shall end by 11:00 p.m. Caterers shall not load or unload vehicles after 11:00 p.m.;
 4. Outdoor music and amplified music is prohibited. An attendant of the bed and breakfast shall be on the premises at all times during social events to ensure that there are no disturbances to the neighborhood;
 5. Guests of the bed and breakfast, including those attending social events, shall be required to use a valet parking service, which must park cars in nearby garages and not on the streets or in alleys; and,
 6. The proprietors shall use their best efforts to ensure that the alley behind the property is not blocked at any time by anyone associated with the bed and breakfast.

6. Petitioners contend that to host catered social events held by guests at Swann House, the Rosses would need relief from the following provisions of the home occupation regulations: 11 DCMR § 203.10(c) (no more than two persons who are not residents of the subject home shall be permitted as employees of the home occupation); 11 DCMR § 203.8(b) (breakfast is the only meal that may be served at a bed and breakfast, and it may be served only to overnight guests); 11 DCMR § 203.4(m) (no more than eight clients or customers are permitted to be on the premises of a home occupation in any one hour period); and 11 DCMR § 203.4(n) (if more than one home occupation is practiced in a dwelling unit, the cumulative impact shall not exceed any of the standards set forth in § 203.4). Petitioners further suggest that Swann House may be barred from hosting social events by the prohibition in 11 DCMR §§ 203.9(a) and 721.2(f) against operating a "catering establishment" as a home occupation. Given our disposition of this case on other grounds, we have no need to decide whether, absent the availability of the accessory use category, hosting social events for guests of a bed and breakfast would violate any of the cited provisions.

a variance, which is more difficult to obtain than a special exception.[7]

■ The crux of the matter is thus whether the BZA reasonably interpreted the Zoning Regulations as permitting accessory uses to other accessory uses. "When the BZA's decision turns on its interpretation of a regulation that agency is charged with implementing, that interpretation must be upheld unless it is 'plainly erroneous or inconsistent with the regulation.'" *Levy v. District of Columbia Bd. of Zoning Adjustment,* 570 A.2d 739, 746 (D.C.1990) (quoting *George Washington Univ. v. District of Columbia Bd. of Zoning Adjustment,* 429 A.2d 1342, 1348 (D.C. 1981)). Petitioners' argument, predicated on a narrow reading of the definition of an accessory use contained in 11 DCMR § 199.1, is at first blush plausible. However the argument.is undercut by the way that the term "accessory use" is actually employed in the Zoning Regulations. As the term is actually used, it supports the reasonableness of the BZA's interpretation.

■ Chapter 2 of Title 11 of the DCMR contains the regulations governing R–1 Residence District Use. Uses permitted as a matter of right, which include residential uses, are enumerated principally in 11 DCMR § 201. Section 202, entitled "Accessory Uses (R–1)," then lists in subsections 202.2 through 202.9 a series of specific uses which "shall be permitted as accessory uses in an R–1 district incidental to the uses permitted in this chapter."[8] Included in this listing are home occupations "as provided in and subject to § 203" (which includes bed and breakfasts, *see* § 203.8).[9] 11 DCMR § 202.8. Notably, after listing these specifically identified, permitted accessory uses, § 202 states:

> 202.10 Other accessory uses customarily incidental to the uses permitted in R–1 Districts *under the provisions of this section,* including mechanical amusement machines that are accessory to uses specified in § 210, shall be permitted, subject to the provisions of § 2501.

(emphasis added).[10] Since the uses permitted "under the provisions of this section," *i.e.,* under § 202, are exclusively accessory uses, the natural reading of § 202.10 is that accessory uses customarily incidental to the specifically permitted accessory uses (including bed and breakfasts) shall be permitted. This conclusion holds even if the word "section" is construed broadly to encompass not only § 202 but also other sections in Chapter 2 of 11 DCMR. On the other hand, it is difficult to read the words "this section" in § 202.10 so as to *exclude* § 202, which is how they would have to be read to be consistent with petitioners' contention that accessory uses cannot be permitted as incidental to other accessory uses.[11]

■ The definition of an "accessory use" set forth in 11 DCMR § 199 .1 as a

---

7. Under 11 DCMR § 203.10(d), any request to modify more than two of the requirements found in 11 DCMR §§ 203.4 through 203.8 shall be deemed a request for a variance rather than for a special exception. "To obtain a variance, the applicant must demonstrate that an undue hardship or an extraordinary situation would result if the Zoning Regulations were applied." *Citizens Coalition v. District of Columbia Bd. of Zoning Adjustment,* 619 A.2d 940, 948 (D.C.1993); *see* 11 DCMR § 3107.2; D.C.Code § 5–424(g)(3).

8. By virtue of 11 DCMR § 351.1, accessory uses permitted in an R–1 district are permitted in an R–5 district such as the Dupont Circle Historic District in which Swann House is located.

9. Other accessory uses listed in § 202 include physicians' and dentists offices, child development homes, the provision of room and board, parking spaces, accessory apartment units and garage sales and similar sales activities.

10. The references in § 202.10 to §§ 210 and 2501 pertain to an unrelated issue, namely the provision of mechanical amusement machines at colleges and universities located in residential districts.

11. We suppose that § 202.10 conceivably could be read in conjunction with the definition of accessory use in § 199.1 so as to permit accessory uses not otherwise identified in the regulations only if they are customarily

use customarily incidental and subordinate to the "principal use" is not necessarily inconsistent with the natural reading of § 202.10. The term "principal use" is not defined in the Zoning Regulations. In the context of § 199.1 it is reasonable to understand the term to have been utilized simply to distinguish the accessory use from the more dominant use to which it is "customarily incidental and subordinate," without further intending that the more dominant use necessarily and in every case must be the *predominant* use of the property in question. This construction has the advantage of harmonizing the definition in § 199.1 with the actual usage of "accessory use" in § 202.10.[12]

 The BZA's interpretation is not otherwise unreasonable. Petitioners evoke the specter that permitting a bed and breakfast to host catered social events for its guests under the guise of a § 202.10 "accessory use" will allow the Rosses to make an end run around the § 203 home occupation regulations and do indirectly what the regulations do not allow them to do directly. This concern is exaggerated. As the BZA observed, this court has upheld an interpretation by the Zoning Administrator that "the Zoning Regulations express no intent to prohibit any and all subordinate or occasional uses, even if outside the scope of the principal use." *Association for Preservation of 1700 Block of N Street, N.W. v. District of Columbia Bd. of Zoning Adjustment,* 384 A.2d 668, 673 (D.C.1978). The "end run" concern is addressed by the requirement that the purported accessory use must truly be customarily incidental and subordinate to a permitted use.

We conclude that the BZA's interpretation of the Zoning Regulations to permit as accessory uses activities that are customarily incidental and subordinate to accessory uses is reasonable and must be upheld. Further, the BZA's finding that the limited number of guest-sponsored social events allowed at Swann House by its order would constitute a truly accessory use *to the bed and breakfast use* is supported by substantial evidence and is not unreasonable or clearly erroneous. *Cf. N Street,* 384 A.2d at 673 (Zoning Administrator testified that even if twenty percent of operation were devoted to accessory use, he would still consider that to be incidental usage for purposes of accessory use regulation). The BZA properly determined, therefore, that it could grant the Rosses' application for a special exception insofar as they needed modification of only two of the conditions enumerated in the home occupation regulations. *See* 11 DCMR § 203.10(b). Finally, we are satisfied that the BZA carefully considered petitioners' concerns and the applicable zoning requirements and, by imposing the conditions it did, made a "reasonable accommodation" between the Rosses and their neighbors "which does not interfere with the legitimate interests of the latter," *Glenbrook Road Ass'n v. District of Columbia Bd. of Zoning Adjustment,* 605 A.2d 22, 32 (D.C.1992), and which otherwise complies with the requirements for granting a special exception. We therefore affirm the BZA's order.

*So ordered.*

---

incidental to *both* the principal use and an identified accessory use. Such a reading of § 202.10 strikes us as inferior to the most natural reading indeed, as highly strained and implausible—and we are aware of no support for it. Most importantly, the abstract possibility of such a reading does not render the alternative interpretation adopted by the BZA an unreasonable one.

**12.** It is a well-established principle of statutory construction that different provisions within the same statute should be construed together, *see Flemming v. United States,* 546 A.2d 1001, 1005 (D.C.1988); *District of Columbia Dep't of Human Servs. v. Bicksler,* 501 A.2d 1, 6 (D.C.1985); and a particular term should be assumed to have a consistent definition throughout a statute, *see Carey v. Crane Serv. Co., Inc.,* 457 A.2d 1102, 1108 (D.C. 1983).