John J. CHAGNON, Petitioner,

v.

DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, Respondent.

No. 02–AA–1279.

District of Columbia Court of Appeals.

Argued Jan. 8, 2004.
Decided March 11, 2004.

John J. Chagnon, pro se.

William J. Earl, Assistant Corporation Counsel, Arabella W. Teal, Interim Corporation Counsel, and Charles L. Reischel, then Deputy Corporation, at the time the brief was filed, were on the brief, for the respondent.

Before SCHWELB and GLICKMAN, Associate Judges, and KERN, Senior Judge.

GLICKMAN, Associate Judge:

Petitioner John J. Chagnon, representing Advisory Neighborhood Commission 4A, challenges a decision of the District of Columbia Board of Zoning Adjustment (BZA) approving the issuance of a certificate of occupancy to Metro Day Treatment Center ("Metro Day").[1] We agree with Chagnon that the BZA erred in concluding that Metro Day is entitled to the certificate of occupancy as a "child/elderly development center." Accordingly, we vacate the BZA's order and remand without reaching the other issues that Chagnon raises in his petition for review.

On August 31, 2001, the Zoning Administrator issued a certificate of occupancy to Metro Day for the stated purpose of operating a "child/elderly development center, serving 30 persons, 22–85 years of age" at 5507 14th Street, N.W. The subject property is located in a C–2–A zoning district, where a child/elderly development center is a use permitted as a matter of right. The ANC appealed the Zoning Administrator's decision to the BZA.

The Zoning Commission amended the Zoning Regulations in 1999 to define the term "child/elderly development center" as:

a building or part of a building, other than a child development home or elderly day care home, used for the licensed care, education, counseling or training of individuals fifteen (15) years of age or less and/or for care of elderly individuals, totaling six (6) or more persons, who are not related by blood or marriage to the caregiver and who are present for less than twenty-four (24) hours per day. This definition encompasses facilities generally known as child care centers, preschools, nursery schools, before-and-after school programs, senior care centers, elder care programs, and similar programs and facilities. A child/elderly development center includes the following accessory uses: counseling, education, training and health and social

---

1. Neither Metro Day nor the owner of the subject property elected to participate in the proceedings before the BZA or this court.

services of the parents or principal guardians of children attending the center.

11 DCMR § 199.1.[2] As the term "elderly" is not defined,[3] the Zoning Regulations provide that it is to be accorded the meaning given in Webster's Unabridged Dictionary. *See* 11 DCMR § 199.2(g).

In its decision and order of October 15, 2002, the BZA found that Metro Day provides care and training for mentally retarded adults, only "some" of whom "are 'elderly' as that word is defined in the dictionary,[4] [while] others [of whom] are young and middle-aged adults."[5] Notwithstanding this finding, however, the BZA further found that a day treatment center for mentally retarded adults such as Metro Day is similar to the kinds of facility encompassed within the definition of a child/elderly development center in terms of "the nature of the use—the care, education, counseling, training, and other social services provided—and impacts of the use on the public."[6] Reasoning that the Zoning Regulations "cannot realistically identify every potential use of property," the BZA concluded that Metro Day qualified as a "similar program and facility" within the meaning of the second sentence of the definition.[7]

Chagnon argues that "elderly" means elderly and not "young and middle-aged" adults, and that the Zoning Administrator and the BZA have no authority to shoe-

2. In its Notice of Final Rulemaking, the Zoning Commission explained the impetus for the 1999 amendment as follows:

> Over the past several years, the Board of Zoning Adjustment (BZA) has been requested to approve special exceptions for a number of child development centers (CDCs) with programs and uses not previously accommodated in CDCs, which typically provide various types of day care for children under 15 years of age. Those additional uses have included adult education, adult counseling, parenting classes, and senior day care in individual and group sessions. These programs, either coupled with CDC activities or housed in CDC facilities, are not specifically identified in the Zoning Regulations. To accommodate these new use combinations, the Board of Zoning Adjustment (BZA) has requested the Zoning Commission to review and amend the Zoning Regulations, as appropriate, to permit these new uses, presumabl[y] with BZA approval in residential zone districts.

46 D.C.Reg. 8284 (October 15, 1999). The Zoning Commission added that it combined proposed definitions of "child development center" and "elderly day care center" into a single definition in order "to simplify the amendments as initially proposed which would have created two entities that provided for the same set of uses." *Id.* at 8285.

3. The Zoning Commission's Notice of Final Rulemaking states that the Office of Corporation Counsel had suggested that it "may wish to define the term 'elderly' in order to avoid misinterpretations of the Commission's intent and encouraged a definition that is specific to age rather than descriptive of the characteristics of the elderly." 46 D.C.Reg. at 8285. The Commission did not explain why it did not follow this recommendation.

4. The BZA quoted the definitions of "elderly" in *Webster's Third New International Dictionary (Unabridged)* (1986) as "somewhat old: rather advanced in years: past middle age" and "of, relating to, or characteristic or one past the prime of life."

5. "Most" of Metro Day's clients, the BZA stated, "are well over age 40 and severely physically handicapped."

6. The BZA credited the testimony of the Zoning Administrator that the traffic and parking impacts of Metro Day's adult day treatment program would be similar to those of a child or elderly development center.

7. Likewise, the Zoning Administrator testified that in reviewing applications involving uses that are not specifically listed in the Zoning Regulations, the Office of the Zoning Administrator applies a concept called "like use." That is, the Zoning Administrator applies "standards of compatibility and likeness to determine the use category."

horn an adult day treatment program that is not principally for children or the elderly into the "child/elderly development center" classification merely because the program and its clients share similar characteristics.

 "When the BZA's decision turns on its interpretation of a regulation that agency is charged with implementing, that interpretation must be upheld unless it is plainly erroneous or inconsistent with the regulation." *Watergate W. v. District of Columbia Bd. of Zoning Adjustment*, 815 A.2d 762, 765 (D.C.2003) (quoting *Dupont Circle Citizens Ass'n v. District of Columbia Bd. of Zoning Adjustment*, 749 A.2d 1258, 1262 (D.C.2000) (internal quotation marks and citations omitted)). The agency has considerable scope in construing language in a regulation that may be ambiguous. By the same token, however, it is our duty to reject an interpretation by the agency "which contradicts the plain language of the regulation itself." *Dell v. Dep't of Employment Servs.*, 499 A.2d 102, 106 (D.C.1985) (citing *Dankman v. District of Columbia Bd. of Elections & Ethics*, 443 A.2d 507, 513 (D.C.1981) (en banc)); *see also Corridor H Alternatives, Inc. v. Slater*, 334 U.S.App. D.C. 240, 245, 166 F.3d 368, 373 (1999) ("While deference is normally due an agency's interpretation of its own rules, that is not the case where 'an alternative reading is compelled by the regulation's plain language.'") (quoting *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994)).

 We are constrained to agree with Chagnon that the BZA misconstrued the plain language of the pertinent regulation in this case. The first sentence of the definition that the Zoning Commission promulgated provides plainly that a "child/elderly development center" must serve (principally) "individuals fifteen (15) years of age or less" and/or "elderly individuals." Contrary to the BZA's reading, the reference to "similar programs and facilities" in the second sentence of the definition does not dispense with that requirement; it merely confirms that other facilities serving children or the elderly *like those specifically listed* ("child care centers, pre-schools, nursery school, before-and-after-school programs, senior care centers, elder care programs") will come within the definition if they meet the requirements of the first sentence. *See Zenian v. District of Columbia Office of Employee Appeals*, 598 A.2d 1161, 1164 (D.C.1991) (quoting 2A NORMAN J. SINGER, SUTHERLAND ON STATUTES AND STATUTORY CONSTRUCTION §§ 47.17, at 166 (4th ed.1984) (footnotes omitted)) ("Where general words follow [or precede] specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding [or following] specific words.").

 The BZA recognized, and it is undisputed, that Metro Day does not principally serve either children or the elderly. The term "elderly" cannot fairly be read to include adults from 22 to 85 years of age (to quote the certificate of occupancy that Metro Day received) just because they share some characteristics with the elderly. That really is the end of the inquiry. Although the BZA and the Zoning Administrator contend that, in the interests of efficient administration, they may interpret defined uses in the Zoning Regulations to encompass other uses that are functionally comparable even if they are outside the definition, they cite no authority for that position and we cannot agree with it. Rather, even if an agency charged with implementing a regulation—which in this case, we note, is *not* the agency that wrote it—perceives it to be deficient or

imperfect, it is not the agency's (or this court's) prerogative "to rewrite the statute [or regulation], or to supply omissions in it, in order to make it more fair." *Moore v. Gaither*, 767 A.2d 278, 285 (D.C.2001) (internal punctuation omitted) (citing *1841 Columbia Rd. Tenants Ass'n v. District of Columbia Rental Hous. Comm'n*, 575 A.2d 306, 308 (D.C.1990)). "[R]egulations cannot be construed to mean what an agency intended but did not adequately express." *L.R. Willson & Sons, Inc. v. Donovan*, 222 U.S.App. D.C. 214, 225, 685 F.2d 664, 675 (1982) (internal quotation marks and citation omitted).[8]

Although Metro Day does not qualify as a "child/elderly development center," it may yet be eligible for a certificate of occupancy under a different use classification. Thus, in vacating the order of the BZA, we remand for further proceedings not inconsistent with this opinion.

*So ordered.*

---

8. In this case, moreover, there is no reason to think the Zoning Commission intended, or even would have wanted, its definition of a "child/elderly development center" to encompass facilities serving non-elderly adults. In its Notice of Final Rulemaking, see note 2, *supra,* the Commission demonstrated that its focus was on only two kinds of facilities—those principally serving either children or the elderly—rather than adult education, counseling or day care facilities generally.