# District of Columbia
# Court of Appeals

No. 15-AA-922

MCCORMICK & SCHMICK RESTAURANT CORPORATION,
                              Petitioner,


FILED

AUG 11 2016

DISTRICT OF COLUMBIA
COURT OF APPEALS

v.                                          CMP-94-14


DISTRICT OF COLUMBIA ALCOHOLIC BEVERAGE CONTROL BOARD,
                              Respondent,


On Petition for Review of a Decision of the
District of Columbia Alcoholic Beverage Control Board

BEFORE: FISHER and MCLEESE, *Associate Judges*; and STEADMAN, *Senior Judge*.

## J U D G M E N T

This case was submitted to the court on the transcript of record and the briefs, and without presentation of oral argument. On consideration whereof, and as set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that petitioner's June 14, 2014, offense should not be enhanced pursuant to § 25-781 (f), and the case is remanded so that the District of Columbia Alcoholic Beverage Control Board ("Board") so that the Board may impose the appropriate penalty for a first violation.

For the Court:

*Julio A. Castillo*

JULIO A. CASTILLO
Clerk of the Court

Dated: August 11, 2016.

Opinion by Associate Judge John R. Fisher.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

FILED 8/11/16
District of Columbia
Court of Appeals

*Julio Castillo*
Clerk of Court

No. 15-AA-922

MCCORMICK & SCHMICK RESTAURANT CORPORATION, PETITIONER,

V.

DISTRICT OF COLUMBIA ALCOHOLIC BEVERAGE CONTROL BOARD, RESPONDENT.

Petition for Review of a Decision
of the District of Columbia Alcoholic Beverage Control Board
(CMP-94-14)

(Submitted June 17, 2016                    Decided August 11, 2016)

*Stephen J. O'Brien* and *Matthew T. Minora* were on the brief for petitioner.

*Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, *Loren L. AliKhan*, Deputy Solicitor General, and *James C. McKay, Jr.*, Senior Assistant Attorney General, were on the brief for respondent.

Before FISHER and MCLEESE, *Associate Judges*, and STEADMAN, *Senior Judge*.

FISHER, *Associate Judge*: On August 5, 2015, the District of Columbia Alcoholic Beverage Control Board ("Board") found that petitioner McCormick & Schmick Restaurant Corp. served alcohol to minors on June 14, 2014, in violation of D.C. Code § 25-781 (a) (2012 Repl.). Because petitioner had previously served alcohol to a minor on May 18, 2012, the Board treated petitioner as a repeat

offender and imposed an enhanced penalty.[1] Petitioner challenges the sanction, arguing that its May 2012 violation occurred beyond the "temporal limit" for counting past violations. The Board contends the violation does fall within the statute's two-year "look-back" period (which the parties agree runs backwards from June 14, 2014), because the previous violation was not adjudicated until August 10, 2012.[2] We agree with petitioner.

Generally, "[t]his court will accord considerable weight to an agency's construction of the statutes . . . that it administers where the meaning of the language is not clear on its face." *Levelle, Inc. v. District of Columbia Alcoholic Beverage Control Bd.*, 924 A.2d 1030, 1035 (D.C. 2007). When interpreting

---

[1] With the understanding that petitioner had committed two violations in a two-year period, the Board imposed a $5,000 fine and a ten-day license suspension (six days of which were stayed as long as petitioner "provide[d] alcohol awareness training from a certified provider to all of its current employees within 30 days" from the date of the Order). D.C. Code § 25-781 (f)(2) (2012 Repl.).

[2] While this petition for review was pending before the court, the Council of the District of Columbia enacted emergency and temporary legislation that appears to adopt the Board's method of calculating when a violation has occurred within the "look-back" period. Permanent legislation to this effect has been introduced and is under consideration by the Council. Both parties agree that the new legislation does not apply to this case. See Resp. Supp. Br. 4 ("[T]he Board heeds 'the oft-repeated warning that the views of a subsequent [legislature] form a hazardous basis for inferring the intent of an earlier one.'") (internal quotation marks omitted) (quoting *Twin Towers Plaza Tenants Ass'n v. Capitol Park Assoc., L.P.*, 894 A.2d 1113, 1120 (D.C. 2006)).

statutory language, this court "read[s] the language of the statute and construe[s] its words according to their ordinary sense and plain meaning." *Mallof v. District of Columbia Alcoholic Beverage Control Bd.*, 43 A.3d 916, 918 (D.C. 2012) (internal quotation marks omitted). However, "[s]tatutory interpretation is a holistic endeavor," *Baltimore v. District of Columbia,* 10 A.3d 1141, 1146 (D.C. 2011) (internal quotation marks omitted), and "[w]e [thus] consider not only the bare meaning of the word[s] but also [their] placement and purpose in the statutory scheme." *Tippett v. Daly*, 10 A.3d 1123, 1127 (D.C. 2010) (en banc) (internal quotation marks omitted).

"If the statute is ambiguous, however, we must defer to the agency's interpretation of the statutory language *so long as* it is reasonable." *Pannell-Pringle v. District of Columbia Dep't of Emp't Servs.*, 806 A.2d 209, 211 (D.C. 2002) (emphasis added); s*ee Cathedral Park Condo. Comm. v. District of Columbia Zoning Comm'n*, 743 A.2d 1231, 1239 (D.C. 2000) (we will defer *unless* the agency interpretation is "unreasonable or in contravention of the language or legislative history of the statute"). Ultimately, "the judiciary is the final authority on issues of statutory construction[,]" (internal quotation marks omitted), and "[w]e review the legal conclusions of an agency de novo." *Levelle, Inc.*, 924 A.2d at 1035-36.

D.C. Code § 25-781 (f), the graduated penalty provision at issue in this case, reads as follows:

> (f) Upon finding that a licensee has violated subsections (a), (b), or (c) of this section in the preceding 2 years:
>> (1) Upon the 1st violation, the Board shall fine the licensee not less than $2,000, and not more than $3,000, and suspend the licensee for 5 consecutive days; . . .
>> (2) Upon the 2nd violation, the Board shall fine the licensee not less than $3,000, and not more than $5,000, and suspend the licensee for 10 consecutive days; . . .
>> (3) Upon the 3rd violation the Board shall fine the licensee not less than $5,000, and not more than $10,000, and suspend the license for 15 consecutive days; . . .
>> (4) Upon the 4th violation, the Board may revoke the license; and
>> (5) The Board may revoke the license of a licensed establishment that has 5 or more violations of this section within a 5-year period.

Although this statute is inartfully drafted (and to a certain extent grammatically ambiguous), its meaning becomes clear when it is read as a whole and with its purpose in mind. As the Board summarizes in its brief, the statute establishes a "graduated penalty system" that determines "when penalties would be enhanced for *multiple violations*" (emphasis added). The Board also agrees that the date of the violation at issue triggers a two-year "look-back" period, and that

the penalty for this triggering violation will be enhanced if the Board "finds that there was an earlier *violation* within . . . [that] period" (emphasis added).

This far, the parties share an understanding of how the statute functions. But then the Board goes on to contend that the statute enhances penalties based not on the number of *violations* that occurred within the look-back period, but on the number of *adjudications* during that time. The Board's focus on adjudications seems to stem from its confusion over the impact of the word "finding." *See* § 25-781 (f) ("Upon finding that a licensee has violated [the statute] . . . in the preceding 2 years . . ."). With support from the dictionary, the Board states, "[i]n this case, the term 'finding' refers to a verdict or decision, which can be inferred to refer to the date of conviction." "On the other hand," the Board recognizes, "the term 'violated' refers to the act of breaching the law, which can be inferred to refer to the date of occurrence." This exegesis leads the Board to conclude that the statute is ambiguous.

However, the Board's analysis of these words in isolation fails to consider their "placement and purpose" in the statute. *Tippett*, 10 A.3d at 1127. The Board forgets that subsection (f) is a penalty provision. It comes into operation only *after* a violation has been found. In context, therefore, "[u]pon finding" is synonymous

with "if the Board finds." It refers to the information that must be determined before the proper sanction may be imposed.

Furthermore, the Board's interpretation treats the words "violated" and "violation" inconsistently. *Cf. Dupont Circle Citizens Ass'n v. District of Columbia Bd. of Zoning Adjustment*, 749 A.2d 1258, 1263 n.12 (D.C. 2000) ("It is a well-established principle of statutory construction that . . . a particular term should be assumed to have a consistent definition throughout a statute."); *Carey v. Crane Serv. Co.*, 457 A.2d 1102, 1108 (D.C. 1983) ("A particular term used in . . . a statute must be assumed to have a consistent definition unless otherwise indicated or *obvious* from the face of the statute or the context in which it appears." (emphasis added)). The Board agrees that petitioner "violated" the statute on the date of the *incident*. Nevertheless, when the Board counts the number of past violations, it looks to the date of *adjudication*. This construction, dubbed "the combination approach," does not square with either the parties' understanding that the statute creates a "look-back" period for *past* violations or the statute's clear focus on "violation[s]." D.C. Code § 25-781 (f) ("Upon the 1st violation . . . . Upon the 2nd violation . . . . Upon the 3rd violation . . . .").

In this case, the combination approach has the odd (and seemingly unfair) effect of enhancing petitioner's penalty based on a violation that occurred beyond the statute's "temporal limit" on enhancements. Following this approach would mean that a licensee's penalties are dependent on the timing of the adjudication process (as opposed to the intervals between occurrences), and thus a licensee could be subject to additional punishment for a prior violation long after the two-year look-back period would indicate. The emphasis that the Board places on the adjudication date seems particularly awkward when the words "adjudication" and "conviction" do not appear in the statute. In this sense, even if the statute were unclear, the Board's construction of the statute is "in [direct] contravention" of the statute's language and purpose and therefore "unreasonable." *Cathedral Park Condo. Comm.*, 743 A.2d at 1239.

Although the Board cites several policy reasons to support its construction, "it is not the agency's . . . prerogative 'to rewrite the statute . . . or to supply omissions in it, in order to make it more fair'" or to fix an aspect of the statute that

the agency "perceives . . . to be deficient or imperfect."[3] *Chagnon v. District of Columbia Bd. of Zoning Adjustment*, 844 A.2d 345, 348-49 (D.C. 2004).

The most natural reading of the statute is that petitioner's previous violation occurred on May 18, 2012, more than two years before the violation at issue here. Therefore, the penalty for petitioner's June 14, 2014, offense should not be enhanced pursuant to § 25-781 (f), and we remand the case so that the Board may impose the appropriate penalty for a first violation.

*It is so ordered.*

---

[3] One of the policy reasons cited by the Board, that "the combination approach has been consistently applied since 2009," remains unsubstantiated. The Board does not cite any orders issued before 2013 that stand for this proposition.